LEIBERMAN, LOVEMAN & O'BRIEN *v.* J. S. BOWDEN, Admr., *et al.*

(*Nashville.* December Term, 1908.)

1. **APPEALS.** Bill of exceptions to preserve evidence or ruling not a part of the technical record.

Where the final decree recited that the cause was "heard upon all the several branches thereof, upon the bills and answers thereto, cross bills and answers thereto, petitions and answers thereto, *pro confessos,* depositions on file, exhibits, and pleadings, oral testimony introduced on the hearing, as hereinafter mentioned." etc., but where it affirmatively appears that the recital as to oral evidence related to a wholly different branch of the case in which complainants and appellants were not interested; and where another part of the decree, allowing complainants an appeal, recited that "complainants, being nonresidents of" the county, "are allowed thirty days to make their appeal bond and file their bill of 'exceptions," it is clear that complainants were not required to file a bill of exceptions in support of their appeal, unless it was desired to preserve some part of the evidence or ruling of the court that was not a part of the technical record. (*Post, pp.* 501-503.)

2. **SAME.** Presumption that jury trial in chancery was waived, in the absence of any exceptions to trial before chancellor, when.

In the absence of any exceptions to the trial of a case before the chancellor without the intervention of a jury demanded in the answer, it will be presumed that a jury was waived. (*Post, p.* 503.)

3. **SAME.** Consent of parties is not necessary to special, limited, or abridged transcript of record.

Consent of parties is not necessary to authorize the supreme court to try a cause upon a special, limited, or abridged transcript of

Leiberman v. Bowden.

the record containing only such parts of the record as were designated in accordance with statute (Acts 1903, ch. 35). (*Post, pp.* 503, 505, 506.)

Acts cited and construed:    Acts 1903, ch. 35.

4.  **SAME.** Same. Appellee designating no additional parts of record for transcript cannot complain, when.

Where counsel for the appellee, after receiving notice of the parts of the record designated by counsel of the appellant for the transcript, fails to designate any additional parts of the record to be inserted in the transcript, he cannot thereafter complain of the transcript made in pursuance of such designation in accordance with the statute (Acts 1903, ch. 35). (*Post, pp.* 503-506.)

Acts cited and construed:    Acts 1903, ch. 35.

5.  **SAME.** Presumption that depositions and documents in transcript were read and constituted a part of the record in consolidated chancery suits, when.

Where certain suits in chancery are, by consent, consolidated with a general creditor's suit, for the trial of all the causes together, with a stipulation that the pleadings, depositions, and exhibits in a certain other suit between certain of the parties, previously tried in said court, and finally determined in the supreme court, may be read as evidence in the consolidated causes, with the further stipulation that, inasmuch as the original record had been destroyed by fire, the same may be read from the original transcript or a proven copy of the same, and the clerk and master certified on the transcript embodying depositions and documents that they were true and perfect copies of such parts of the record as were designated for the transcript by counsel of appellant, no objection can be made to the transcript in the supreme court on the ground that it embodies depositions and documents not read on the hearing below, or that it fails to show affirmatively what depositions and evidence were before the court, especially where it appears that no exception or objection was made, before the clerk and master in the court be-

121 Tenn—32

Leiberman v. Bowden.

low, to the specific portions of the record designated by counsel
of appellant for the transcript; for, in such case, it will be pre-
sumed that the selected portions of the record were read on
the hearing and constituted a part of the record of the trial.
The verity of the certified record cannot be thus impeached upon
the mere suggestion of counsel, without even an affidavit to sup-
port the objection.   (*Post, pp;* 506-509.)

6. **SAME.** Chancery cause is tried de novo upon transcript of
record in supreme court; rule in law cases.

While in a law case, in the absence of a bill of exceptions, the
supreme court will presume that there was sufficient evidence
to sustain the finding of the court below; but in a chancery
cause, the hearing in the supreme court must be *de novo* upon
the transcript of the record filed, and in the absence of any evi-
dence in the record to support the decree, it must be reversed.
(*Post, p.* 510.)

Cases cited and approved:   Shelby Co. v. Bickford, 102 Tenn., 402;
Hearst v. Proffit, 115 Tenn., 560.

7. **MORTGAGES.** Assumption of timber mortgage debt by the
purchaser of the land does not extend lien to the land itself,
when.

Where the owner of certain land mortgaged the timber thereon,
and then subsequently sold and conveyed the land, with war-
ranty of the title, except as against the said mortgage lien on
said farm, and reciting that the purchaser agreed to pay and
discharge said lien, in addition to the purchase price stipulated
therein, such deed created a mere assumption of the timber
lien, and did not enlarge it to a claim on the farm or land
itself.   (*Post, pp.* 510-517.)

8. **VENDOR'S EQUITY OR IMPLIED LIEN.**   Is defeated by
conveyance before suit to fix and enforce the lien.

A vendor's equity or implied lien for the purchase price of land is
defeated by the vendee's sale and conveyance of the land be-
fore the institution of suit to fix and enforce it.   (*Post, p.*
518.)

Cases cited and approved:   Watson v. Watson, 1 Bax., 387; Bac-
chus v. Peters, 85 Tenn., 679.

Leiberman v. Bowden.

9. **SAME. Same. No subrogation to vendor's equity or implied lien after vendee's conveyance, when.**

There can be no subrogation to the vendor's equity or implied lien by a prior mortgagee whose debt was assumed by the vendee, where the vendee has sold and conveyed the land before any suit was instituted to declare and enforce the subrogation. (*Post, pp.* 517, 518.)

10. **SAME. Mortgagee is not estopped to enforce the personal liability of the purchaser assuming the mortgage debt by stating that he would look to the original debtor, when.**

Where the purchaser of land subject to a timber mortgage assumed and agreed to pay the debt as a part of the consideration, the mortgagee was not estopped to enforce the purchaser's personal liability for the debt by the fact that, after such sale and conveyance of the land, he instituted and prosecuted a suit against the mortgageor to foreclose the mortgage against the timber and for a personal judgment, without making said purchaser a party to the suit, nor by the fact that on several occasions, when informed of such assumption, he stated that he would look to the original debtor to perform his contract, etc., especially where he made no objection to the performance of the contract by the such assumer and actually received payments from him. (*Post, pp.* 510-520.)

## FROM FENTRESS.

Appeal from the Chancery Court of Fentress County. —D. L. LANSDEN, Chancellor.

J. A. BARNES and NATHAN COHN, for complainants.

CONATSER & CASE, for defendants.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

Complainants recovered a decree in the chancery court of Fentress county against J. S. Bowden, administrator of the estate of George R. Wright, for $1,-482.20 and cost. There was a sale of certain timber, which only realized $50. This amount was credited on the decree. The estate of George R. Wright was insolvent, and the remainder of the complainants' decree remains unsatisfied. The complainants presented this unsatisfied decree by petition in the case of *John H. Compton v. Interstate Petroleum Company* which was a general creditors' bill filed in the chancery court at Jamestown, alleging the insolvency of said company and seeking to wind it up as an insolvent corporation. There was a reference to the clerk and master to take proof and report what debts of any character are due and unpaid from John H. Compton, or the Interstate Petroleum Company, or both, to Leiberman, Loveman & O'Brien, and whether any payments have been made to Leiberman, Loveman & O'Brien on the claims set up in their petition, and what payments have been made by Jas. and M. G. Cusack to Leiberman, Loveman & O'Brien in logs and lumber. The master made a report, which it is unnecessary at this time to notice further than to say that he found nothing due to Leiberman, Loveman & O'Brien, which report was confirmed by the chancellor, and the complainants' petition was dismissed, and thereupon complainants ap-

Leiberman v. Bowden.

pealed to this court. Solicitors for Compton and J. S. Bowden, administrator, now move to dismiss the appeal for the following reasons, namely:

"First. Because it appears from the final decree in the case that it was heard by the chancellor on oral evidence, as well as other record evidence, and in the decree allowing the appeal the court required Leiberman, Loveman & O'Brien to make out and file a bill of exceptions in thirty days. Appellees now move to dismiss the appeal because no bill of exceptions has ever been filed.

"Second. Because the notice served on the attorneys of the appellees, designating certain parts of the record to be copied, was only served four days before the clerk and master certified to the transcript in this case, and did not allow the appellees sufficient time to give notice of the parts of the record they desired copied, and the case should be dismissed for that reason.

"Third. Because there is no bill of exceptions filed in the case.

"Fourth. Because there is not a full and complete transcript of the record sent to this court, and the act of 1903, under which the partial record was attempted to be made up, does not authorize the court to try a case on such partial record, unless the consent of the opposing party is given in some way which has not been done in this case."

Counsel for the motion are in error in stating that "the court required Leiberman, Loveman & O'Brien

in thirty days to make out and file a bill of exceptions."
On this subject the decree allowing the appeal recites:
"Which appeal to them is granted upon the execution
of an appeal bound in the sum of $250. Said complainants, being nonresidents of Fentress county, are allowed thirty days to make their appeal bond and file
their bill of exceptions." It was conceded that no bill
of exceptions was filed. Again, counsel is in error in
stating that this branch of the general creditors' bill
was heard on "oral evidence, as well as other record
evidence." The final decree recites as follows:

"This cause came on to be heard upon all the several
branches thereof, upon the bills and answers thereto,
cross bills and answers thereto, petitions and answers
thereto, *pro confessos,* depositions on file, exhibits, and
pleadings, oral testimony introduced on the hearing,
as hereinafter mentioned," etc.

It appears from the context of the decree that complainants' branch of the case was not heard on oral
evidence; but in a subsequent portion of the decree,
in disposing of the petition of John H. Compton to
amend his original bill, it was ordered, adjudged, and
decreed by the court that there was no fraud in the
decree sought to be modified or corrected by the petition of John H. Compton, and wherein his petition
filed for that purpose was dismissed. We find this
recital: "This branch of the case was heard on oral
and written testimony." It does not appear, therefore,
that complainant's branch of the case was heard "on
oral evidence, as well as other record evidence;" but

Leiberman v. Bowden.

it affirmatively appears that the recital of the decree, referring to oral evidence, related to altogether a different branch of the case. It is clear, therefore, that complainant was not required to file a bill of exceptions, unless he desired to preserve some part of the evidence or ruling of the court that was not a part of the technical record.

It is said, however, that a jury was demanded in the answer, and, since this demand does not appear to have been waived, a bill of exceptions was absolutely necessary. It does appear, however, that the cause was tried before the chancellor without the intervention of a jury, and in the absence of any exceptions to the trial of the case by the chancellor it will be presumed that a jury was waived.

It is said, however, by counsel for appellees, that the transcript in this case was prepared by the clerk and master upon notice from counsel for appellants under chapter 35, p. 67, Acts 1903, designating such portions of the record as they desired to be embodied in the transcript. It is admitted by counsel for appellees that they received notice under act of 1903 that counsel for appellants only desired certain portions of the record to be included in the transcript; but they insist that said notice was only given four days before the transcript was copied, which was not a sufficient time to permit counsel for appellees to designate such other portions of the record as they desired to be copied. It may be remarked that counsel for appellees do not claim that any portion of the record material to the

proper determination of this branch of the case was omitted from the transcript. It does not appear that they now desire any additional portion of the record sent up, nor do they claim that they are injured by the transcript made up by the clerk under notice given by counsel for appellants. Chapter 35, p. 67, Acts 1903, provides:

"Section 1. That hereafter when any case is appealed from any court to any other court in this State, and the transcript of the record of such cause is required to be filed in the appellate court, a notice thereof, provided for in section 2 of this act being given, it should be lawful for the appellant or solicitor to designate in writing signed, all such parts of the record and papers in the cause as may be considered to bear upon the questions involved in the appeal and the clerk shall transcribe and be entitled to charge for such parts of the record and papers so designated," etc.

"Sec. 2. That when parts of a record and papers are designated to be copied, notice thereof shall be given to the opposing party or solicitor, by the party or solicitor so wishing to abridge the transcript, whereupon such other party or solicitor may, if desired, likewise designate the remainder or such other part of the remainder of the record and papers of the cause as such one may wish transcribed, and thereupon the clerk shall also transcribe same and be entitled to charge therefor.

"Sec. 3. That the written designation of each or all of the parties or solicitors, hereinbefore provided for, shall

Leiberman v. Bowden.

be transcribed as part of the record, and in case it shall appear to the appellate court that the designation of such remainder or additional parts of the record and papers was unnecessary, and unreasonably expensive and burdensome, it shall be the duty of the appellate court to adjudge all such unnecessary cost against the party having so required the same to be incurred."

In pursuance of the practice authorized by this statute, counsel for appellants, November 28, 1908, notified counsel for appellees in writing that they had designated certain parts of the record and papers in said cause, enumerating them, for insertion in the transcript.

Counsel for appellees did not designate or offer to designate any portion of the remainder of said record and papers to be embraced in said transcript. The clerk and master thereupon made up a transcript only embracing such portion of the record as had been designated by the counsel for the appellants. The certificate of the clerk and master to the record is dated December 1, 1908, which indicates that the notice for special portions of the record was given by counsel for appellants only three days before the transcript was made up. It is assumed by counsel that the act of 1903, under which a special record was made up, does not authorize this court to try a cause on such special record, unless it appears that the consent of the opposing counsel had been given. In this assumption, counsel is in error. The act of 1903 was designed to save

Leiberman v. Bowden.

costs to litigants and to abridge voluminous records. It establishes a practice which is to be commended and encouraged. Under this act counsel for appellant is authorized, after giving notice to adversary counsel, to designate only such portions of the record as he conceives is material to the proper presentation of the case to the appellate court. If the opposing counsel conceives the portion of the record designated insufficient, he is authorized to direct the insertion of the remainder of the record, or such additional portion thereof as may be material to his client. If he fails to designate such additional portion of the record after receiving notice from opposing counsel, he is in no attitude to complain of the transcript thus made up in accordance with the statute. It is not necessary that his consent shall be given to a limited or abridged transcript in order to give this court jurisdiction in the case. It may be that, in view of the residence of the counsel some distance away from the courthouse, a notice of only three days was insufficient; but it is unnecessary for us to determine this question.

It is further objected by counsel for appellees that many of the documents, exhibits, and depositions, especially designated and embodied in this transcript, were not filed or read in the court below, and that other depositions, which were read, were not taken in said cause, but in other and independent litigation. We think this objection presents the most serious question raised by the motion. It appears that when the insolvent bill of *John H. Compton* v. *Interstate Petro-*

Leiberman v. Bowden.

*leum Company* and *Others* was filed, the case of *Leiberman, Loveman & O'Brien* v. *Geo. R. Wright* and *J. S. Bowden*, administrator, was pending. The case of *Jas.* and *M. G. Cusack* v. *John H. Compton et al.*, was also pending in the chancery court. There is a decretal order of record reciting "that upon motion these causes are consolidated and shall proceed as one." Again, we find in the record a stipulation of counsel, dated January 9, 1908, as follows:

*"John H. Compton* v. *Interstate Petroleum Co., and Other Consolidated Causes.*

"In the Chancery Court at Jamestown, Tenn.

"In these consolidated causes the following agreement is made and entered into by and between John H. Compton, Interstate Petroleum Company, James Cusack, and Leiberman, Loveman & O'Brien:

"It is agreed that either party may use as evidence in these consolidated causes the depositions in the case of *Leiberman, Loveman & O'Brien* v. *Geo. R. Wright and John H. Compton,* heretofore tried in the chancery court at Jamestown, Tennessee, and appealed to the supreme court, and there determined. Said depositions and exhibits will be read subject to exception for competency only, and will be treated as though they had been taken in this cause; and, the original depositions and exhibits having been destroyed by fire at the burning of the courthouse at Jamestown, it is therefore further agreed that they were correctly copied into the transcript of the record in the case of *Leiberman, Love-*

*man & O'Brien* v. *Geo. R. Wright and John H. Compton*, above referred to. It is agreed that the said depositions and exhibits, bill, and answer may be read from the original transcript, or a copy of the same proven to be a correct copy. . . ."

It will be observed that the several causes which were pending when the general creditors' bill was filed were consolidated with the case. It will be further noticed from the stipulation of counsel that it was agreed that the deposition, exhibits, bills, and answers in those cases might be read in the insolvent proceeding and treated as though they had been taken in that cause.

It was further provided that the depositions, exhibits, bill, and answer in *Leiberman, Loveman & O'Brien* v. *Geo. R. Wright and John H. Compton,* having been destroyed by fire, they might be read from the original transcript of that cause on file in the supreme court. But it is said the transcript on file in this court embodies depositions and documents which were not read on the hearing below, and that it fails to affirmatively show what depositions and evidence were before the court. We find nothing in the transcript to discount the verity of the record, nor anything to show that the depositions and exhibits therein embodied were not read on the hearing below. Counsel for appellants designated such portions of the record as he desired copied, and the clerk and master has certified on the transcript that these portions of the record are true

and perfect copies of such parts of the record as are set out in the notice given by complainants' counsel to the clerk and master.  If any portion of the record especially designated in the notice of appellants' counsel was not a part of the record and was not read on the hearing below, it was the duty of counsel for appellees, when such notice was served on them, to except to such portions of the selected record as did not constitute part of the record.  Although this notice, especially enumerating specific portions of the record to be copied, was served on counsel for appellees three or four days before the transcript was made up, no objection was made by them to the verity of the record, nor did they ask leave to embody any additional portions of the record.  We must presume, in the absence of any exception below on the part of counsel for appellees, that the selected portions of the record were read on the hearing and constituted a part of the record of that trial.  In face of the clerk and master's certificate that the selected portions are true and perfect copies of the record, this court cannot, upon a mere suggestion of counsel, permit the verity of the record to be impeached.  No affidavit has been filed by counsel showing that the present transcript contains anything that was not read on the hearing below and did not constitute a part of the record of that trial.  We are constrained, therefore, to accept the present transcript as the record of the trial properly made up in the court below, and will proceed to consider the case

on its merits.

In a law case, in the absence of a bill of exceptions, this court will presume there was sufficient evidence to sustain the finding of the court below; but in a chancery cause the hearing of this court must be *de novo* upon the transcript of the record filed. In the absence of any evidence in the record to support the decree, it must be reversed under the practice of this court. *Shelby County* v. *Bickford,* 102 Tenn., 402, 52 S. W., 772; *Hearst* v. *Proffit,* 115 Tenn., 560, 91 S. W., 207.

It appears that in November, 1899, complainants purchased from George R. Wright all the logs and timber upon a certain tract of land designated as the "Goose Neck Farm," and Wright executed to complainants a mortgage upon the timber on this farm to secure the performance of his contract, as well as to cover certain advances of money already made and to be made by complainants to himself. It further appeared that on February 28, 1900, Geo. R. Wright sold the "Goose Neck Farm" to the defendant John H. Compton, and the deed conveying the property contained the following clause: "This warranty is not made . . . against a lien in favor of Leiberman, Loveman & O'Brien against the William King farm above described, known as the 'William King Goose Neck Farm,' of $2,110, but said Compton agrees to pay and discharge said liens himself, in addition to paying the $8,000 aforesaid."

Leiberman v. Bowden.

It further appeared that in August, 1900, complainants instituted a suit in the chancery court of Fentress county against Wright and Compton to foreclose a mortgage executed by Wright in favor of Leiberman, Loveman & O'Brien upon the timber on the "Goose Neck Farm" and for a personal judgment against Wright. This mortgage was executed on the 13th of November, 1899, and covered "all merchantable poplar, oak, and ash timber on what is known as 'William King Goose Neck Farm.'" That litigation came to the supreme court, when this court affirmed the decree of the court of chancery appeals, pronounced a personal judgment against Wright for $1,089.86, and remanded the cause to the chancery court for the purpose of foreclosing the mortgage by a sale of the timber. Although this bill was filed after John H. Compton purchased the "Goose. Neck Farm" and had assumed the payment of the liens on the timber in favor of Leiberman, Loveman & O'Brien, Compton was not made a party defendant to that litigation. It will be also observed that complainants in that litigation did not proceed upon the idea that they had a lien on the "Goose Neck Farm" for the satisfaction of their claim; but their theory clearly was that their lien only extended to merchantable poplar, oak, and ash timber on the "Goose Neck Farm." After the remandment of the case to the chancery court, the mortgage was foreclosed and the timber bought in by Leiberman, Loveman & O'Brien, the mortgagees, for the sum of $50. Thereupon complain-

ants, Leiberman, Loveman & O'Brien, filed the present bill against J. S. Bowden, administrator of the estate of Geo. R. Wright, deceased, John H. Compton, and the Interstate Petroleum Company, wherein complainants claim a lien on the "Goose Neck ·Farm" by virtue of the clause in the deed from Geo. R. Wright and others to John H. Compton: "This warranty is not made . . . against a lien in favor of Leiberman, Loveman & O'Brien against the William King farm above described, known as the 'William King Goose Neck Farm,' of $2,110; but said Compton agrees to pay and discharge said liens himself, in addition to paying the $8,000 aforesaid." It was further alleged in the bill that John H. Compton had subsequently conveyed the "Goose Neck Farm" to the Interstate Petroleum Company, and that this latter deed of conveyance also contained the same stipulation relating to the debt in favor of Leiberman, Loveman & O'Brien. The present bill prays:

First. That it be filed as a petition in the insolvency proceedings styled *"John H. Compton* v. *Interestate Petroleum Company,"* or that this case be consolidated and heard in said insolvency proceedings.

Second. That complainants be subrogated to all such vendors' liens as may exist in favor of defendant Bowden as administrator of Geo. R. Wright's estate, or in favor of the defendant John H. Compton against the Interstate Petroleum Company, and that all such rights as may exist in favor of complainants as bene-

ficiaries under deed of February 28, 1900, from Geo. R. Wright and others to John H. Compton be established and enforced against said land now in possession of defendant the Interstate Petroleum Company.

Third.   That all such personal decrees against defendants hereto, and decrees against said land for the satisfaction of complainants' said judgment, as complainants may be entitled to, be entered herein.

It appears that an order was entered consolidating this case with the insolvency proceeding and two other cases.   As already stated, there was a reference to the clerk and master of this claim, among others, wherein the master was diretced to report as follows:

(3) "What debts of any character are due and unpaid from John H. Compton, or the Interstate Petroleum Company, or both, to Leiberman, Loveman and O'Brien."

(10) "Whether or not any payments have been made to Leiberman, Loveman & O'Brien on their claim set up in their bill and petition, the amount thereof, by whom paid," etc.

The clerk and master reported as follows:

Eighth item: "I would report, from the weight or preponderance of the evidence as I have been able to understand it, that neither John H. Compton nor the Interstate Petroleum Company are indebted to Leiberman, Loveman & O'Brien in any amount.   The proof shows conclusively that said firm of Leiberman, Loveman & O'Brien refused to recognize said Compton or

121 Tenn—33

the Interstate Petroleum Company in the matter of their claim against Geo. R. Wright."

Complainants excepted to this finding of the clerk and master, and on the hearing the chancellor decreed as follows:

"It further appears to the court from the evidence that Leiberman, Loveman & O'Brien are not entitled to the relief sought by their bill filed in this cause. The court being of the opinion that said Leiberman, Loveman & O'Brien are estopped to recover anything from John H. Compton, individually, because of their failure and refusal to recognize him, and because, after the assumption by him of the debt owing by Geo. R. Wright and the Cusacks to said Leiberman, Loveman & O'Brien, and their refusal to recognize said Compton, another and different arrangement was made by and between said John H. Compton and the Cusacks as to payment, which had been carried out, and the court being further of the opinion that action out of which the controversy grew, and as such, would not have any right of action against the Interstate Petroleum Company or said John H. Compton, the exceptions to the eighth item of the report are therefore overruled and disallowed."

Again the clerk and master reported:

Tenth item: The clerk and master reported that Leiberman, Loveman & O'Brien gave credit on their claim of $2,110 in the sum of $1,290.22 for lumber received from Geo. R. Wright for the Cusacks. He then

reports that, from all proof, Leiberman, Loveman & O'Brien have been fully paid the amount due them; "but from the proof I cannot give the exact amounts they have received."

Twelfth item: Upon this item the clerk and master reports that payments made by Jas. & M. G. Cusack to Leiberman, Loveman & O'Brien in lumber and logs are the same as fully reported in the answer to item 10.

The chancellor sustained the exception to the tenth and twelfth items of the master's report upon the grounds that defendants to the bill of Leiberman, Loveman & O'Brien are estopped by the record in the former suit of Leiberman, Loveman & O'Brien against Geo. R. Wright and others, and by judgment of the supreme court of Tennessee rendered in said cause, to plead the payment of the amount sued for by said Leiberman, Loveman & O'Brien.

Complainants assign as error:

(1) The decree of the chancellor in overruling the exceptions of complainants, Leiberman, Loveman & O'Brien, to the eighth item of the report of the clerk and master.

(2) The chancellor erred in finding that complainants, Leiberman, Loveman & O'Brien, are estopped from recovering anything of John H. Compton individually.

(3) The chancellor erred in finding that complainants, Leiberman, Loveman & O'Brien, had no right to action against John H. Compton or the Interstate Petroleum Company, and not decreeing a personal judg-

ment against John H. Compton in favor of defendants for the unpaid balance of $2,110 assumed by said Compton as part of the purchase price of said "Goose Neck Farm."

(4) The chancellor erred in not decreeing that complainants, Leiberman, Loveman & O'Brien, were entitled to a lien and a prior lien on the King or Goose Neck tract of land for the unpaid portion of $2,110, with interest, part of the purchase money for said tract, both by virtue of their rights as the direct beneficiaries of the vendor's lien retained in the deed of February 26, 1900, and by way of subrogation to the rights of Geo. R. Wright.

(6) The chancellor erred in dismissing said complainants' bill and imposing costs.

These assignments of error may be resolved into three propositions:

(1) That complainants are entitled as beneficiaries to enforce a lien on the "Goose Neck Farm" for the unpaid balance of the debt due them from Geo. R. Wright.

(2) Complainants are entitled by way of subrogation to enforce the implied vendor's lien in favor of Geo. R. Wright for the balance of their debt as part of the unpaid purchase money for said "Goose Neck Farm."

(3) That complainants are entitled to a personal judgment against John H. Compton for the unpaid balance of their debt, amounting to $880, because the

payment of the same was expressly assumed by John H. Compton as purchaser of the "Goose Neck Farm" from Geo. R. Wright.

In response to these assignments of error, we are of the opinion, first, that complainants have no lien on the "Goose Neck Farm," either as direct beneficiaries or by way of subrogation to the implied vendor's lien of Geo. R. Wright under the deed made by him to John H. Compton on the 28th of February, 1900. The clause in the deed which complainants claim gives them this lien is as follows:

"This warranty is not made against a lien . . . in favor of the firm of Leiberman, Loveman & O'Brien against the William King farm above described, known as the 'William King Goose Neck Farm,' of $2,110; but said Compton agrees to pay off and discharge said liens himself, in addition to paying the $8,000 aforesaid."

It is true the word "farm" was used in describing this lien; but the only character of lien or claim that complainants had at the date of this deed was a lien on the timber under the mortgage executed to them by Geo. R. Wright on the ——— day of ———. This deed was simply an assumption of that timber lien, and was not intended to enlarge that lien to a claim on the farm itself. Again, complainants are not entitled to be subrogated to any implied lien of the vendor, Geo. R. Wright, for the reason that Wright himself would not be entitled to assert this implied lien against the Interstate Petroleum Company, a subven-

dee of the land. *Robinson* v. *Owens,* 103 Tenn., 91, 52
S. W., 870. "A vendor's equity or implied lien for the
purchase price of land is defeated by the vendee's sale
and conveyance of the land before the institution of
suit to fix and enforce it." *Bacchus* v. *Peters,* 85 Tenn.,
679, 4 S. W., 833; *Watson* v. *Watson,* 1 Baxt., 387.

It is strenuously insisted, however, that Leiberman,
Loveman & O'Brien are entitled to a personal judgment
against John H. Compton for the sum of $890, balance
of their debt, for the reason it was expressly assumed
by Compton as a part of the purchase money in the
deed executed to him by Geo. R. Wright. As already
seen, the timber mortgage was enforced after the deed
from Wright to Compton had been executed, and the
timber purchase by Leiberman, Loveman & O'Brien for
the sum of $50.

The next inquiry is whether the complainants are
entitled to a personal judgment against John H. Comp-
ton for the balance of their debt against Wright, upon
the ground that Compton assumed the payment of it
as a part of the purchase money in the deed to him
from Wright. The chancellor found that complainants
are estopped from recovering on this ground for the
reason that Mr. Leiberman, representing said firm, re-
fused to recognize Compton in the assumption of this
debt. We are of the opinion that on this branch of
the case the chancellor was in error. We de not find
sufficient facts in this record upon which to predicate
an estoppel against the complainants to now insist on

a personal recovery against John H. Compton. It is true Compton testifies that, after he had assumed the payment of the Wright indebtedness, he informed complainants of the fact, when Leiberman told him that complainants would look to Wright, and Wright alone, for the collection of their debt. Mr. Leiberman also testifies as follows:

"Our firm did have a correspondence with the defendant Wright about this matter. After he sold the farm to John H. Compton, he wrote us letters in which he requested us to look to Compton for the faithful carrying out of this contract. We replied to these letters, and in reply we invariably insisted upon looking to him, and to no one else, for the carrying out of this contract."

In a letter written by complainants to Geo. R. Wright March 30, 1900, Mr. Leiberman said:

"We have no objection, of course, who it is that brings us the lumber. The contracts that we have will stand as they are."

It appears, however, that after all this Compton delivered a shipment of lumber to Leiberman, Loveman & O'Brien on account of this assumption of liability, amounting to $534.77, and again, on the 7th of April following, Compton delivered to complainants a second shipment of lumber, amounting to $755.45. Complainants accepted these deliveries of lumber from Compton, which were credited on the amount due, $2,110, leaving something over $800 due the complainants.

In considering the whole evidence on this subject, we are impressed with the fact that Leiberman, Loveman & O'Brien declined to release Wright as paymaster and substitute Compton, but were willing, of course, to accept payment of their debt in money or lumber from Compton. Compton assumed the payment of this debt as part of the purchase money, and complainants' right to enforce that liability cannot be avoided by the fact that in another proceeding, in which Compton was made a party, another remedy was pursued. The fact that Compton and Cusack afterwards entered into an arrangement by which Compton was to be released from the payment of the balance of complainants' indebtedness could not affect the liability of Compton to complainants as direct beneficiaries under his deed from Wright. If, therefore, the parties cannot agree upon the balance due complainants, the cause will be remanded for the statement of an account.

It follows that in this respect the decree of the chancellor will be reversed, and the defendants will pay the costs of the appeal.