## INTERNATIONAL LIFE INS. CO. v. CARROLL et al.

(Circuit Court of Appeals, Sixth Circuit. January 12, 1927.)

No. 4648.

1. **Insurance** ⬿116(1)—Joint and several obligors financially unable to pay have "insurable interest" in each other's lives.

Persons jointly and severally bound on obligations which they are financially unable to pay have an "insurable interest" in the lives of each other.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Insurable Interest.]

2. **Insurance** ⬿665(6)—Insurer's defense of suicide held not established.

Evidence *held* insufficient to establish defense of suicide of a person killed in an automobile wreck.

3. **Insurance** ⬿646(7)—As respects insurance legal presumptions arising from fact of death are against self-destruction.

As respects life insurance, the presumptions of law arising from the fact of death are against self-destruction.

4. **Insurance** ⬿665(6)—Party relying on suicide as defense has burden of proving it by preponderance of evidence.

The law places on him who relies on self-destruction the burden of showing it by a preponderance of the evidence, and this is not sustained by proof of motive, with circumstances probably indicating suicide, if there is equal probability that the death was accidental.

5. **Insurance** ⬿665(6)—Suicide will not be inferred from circumstances, unless that is the more reasonable view.

Defendant, alleging suicide as defense, must fail, where the issue is left to inference, unless the more reasonable view is that the act was suicidal.

Appeal from the District Court of the United States for the Western District of Tennessee; Harry B. Anderson, Judge.

Suit in equity by the International Life Insurance Company against Thomas B. Carroll and others. Decree for defendants, and complainant appeals. Affirmed.

John M. Atkinson, of St. Louis, Mo. (W. Thomas Coleman, of Morristown, Tenn., on the brief), for appellant.

C. G. Bond and C. W. Hewgley, both of Jackson, Tenn. (Bond & Bond, Murray & Murray, S. J. Everett, Hu C. Anderson, L. L. Fonville, T. W. Pope, R. R. Sneed, and Pearson & Hewgley, all of Jackson, Tenn., on the brief), for appellees.

Before DENISON and MOORMAN, Circuit Judges, and GORE, District Judge.

MOORMAN, Circuit Judge. On November 4, 1924, appellant issued a joint policy of insurance upon the lives of Thomas B. Carroll, James L. Lamping, and John W. Ross, payable to the survivor or survivors. Ten months later it filed this suit to cancel the policy, alleging fraudulent representation in procuring it, lack of insurable interest of any one of the policy holders in the life of either of the others, and the suicide of Ross, terminating the policy under its express terms and fixing the liability thereunder at a sum equal to the first year's premium.

[1] The first two grounds relate to the insurable interest of the policy holders. If there was no such interest, the policy must be canceled, not only for that reason, but also because of the fraudulent representations that were made in procuring it. The facts as to these questions are not in dispute. They appear in the application for the policy and in a stipulation showing that the three were jointly and severally bound on sundry obligations which they had incurred in joint real estate ventures. Each was bound to pay the full amount of these obligations upon the default of his co-obligors. No one of them was financially able to pay his part, but presumably—nothing to the contrary appears in the record—each of them hoped to do so, and even to recoup his fortune, if he lived. They were therefore mutually and beneficially interested in the continuation of the lives of each other. This interest, we think, was insurable. Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U. S. 457, 24 L. Ed. 251; United States v. Hardware Co., 265 U. S. 189, 44 S. Ct. 546, 68 L. Ed. 970. We also find, as did the court below, that there was no intent to defraud the company when the policy was taken out, and no misrepresentation by any of the policy holders of their joint or several interests.

[2] The third contention depends on the cause of Ross' death. If he committed suicide, the liability under the policy was an amount equal to the first premium, which amount appellant offered to pay into the registry of the court. The facts are as follows: He started alone in an automobile about 7:30 on the morning of July 9th to his kennels, several miles from Jackson. Four or five miles from the city the road crossed a ditch, over which there was a steel bridge that had been used for more than a year. He was seen at least twice en route, was driving slowly when seen, and was apparently too preoccupied to notice those whom he passed. He was familiar with the road. The ditch was 6 feet deep, with 2 or 3 feet of water in it. Shortly after

8 o'clock his car was found in the ditch, turned upside down, and he was beneath it dead. The tracks of the car indicated that about 60 feet from the bridge it had turned off the road to the right, proceeding straight to the ditch. The ground over which it ran after leaving the road sloped to the right. The foot brakes on the car were poor. When it was taken from the ditch, one door was open and the engine was in intermediate speed.

Ross was the United States Judge for the Western District of Tennessee. He was 45 years of age, left a wife and five children, was hopelessly in debt, and had nothing except a few hundred dollars in bank and a modest home, for which he had not paid. He and Carroll, who was the cashier of the People's Savings Bank of Jackson, Tenn., and Lamping had engaged extensively in real estate speculations, and had lost heavily. Their obligations were pressing. The bank became involved, and a committee of its stockholders, learning of its condition, called on Ross and demanded payment of his overdue indebtedness. He was unable to pay, and told them that, while he was legally bound on all the paper they held against him, he had received nothing for a large part of it, and that Carroll had not only caused him to lose all that he had, but had irretrievably involved him in debt. The bank failed June 5th, and it was charged that he and Carroll had wrecked it. The newspapers of Jackson and Memphis demanded that he clear himself of the imputation or resign from office. The Bar Association of Memphis requested him to remain off the bench until it could investigate the charges against him. He thought of resigning from office, but decided not to do so while the charges were pending. Insistent demands were made for a grand jury investigation. It came, and resulted in three indictments, returned July 8th, in one of which, to his surprise, he was charged with forging the name of Kirkpatrick, the keeper of his kennels. He surrendered, and gave bond in the sum of $25,000. To friends he said he was unjustly accused; that he was prepared to fight and would be vindicated. He had prepared a statement to submit to the Bar Association. It did not refer to the charge of forgery. On the afternoon of the 8th he was engaged in reforming it to meet that charge. The following morning his death occurred.

Appellant claims that there was strong motive for self-destruction. As indicating that it was carried out, counsel refer to the making of a new will by the deceased after the bank's failure, his familiarity with the road over which he was traveling, the moderate rate of speed at which he was driving when seen, the last time when 400 yards from the bridge, the good condition of the steering gear when the car was taken from the ditch, and the tracks leading to the ditch, which they say show that the brakes were not applied and the steering wheel was held firmly. Appellees rely on proofs tending to show that the car brakes were bad, the steering gear defective, and it was possible that the car was deflected to the right by a hole in the road. They further say, and the photographs we think support them, that the chances were that the driver of a car, in passing over the embankment, would not be killed or fatally injured, and hence, if Ross wanted to kill himself, it is not likely that he would have taken so uncertain a method of attempting it. They also point to the fact that he repeatedly asserted his innocence of any wrongdoing, had prepared a statement for the Bar Association, and had expressed a purpose, compatible with his nature, of fighting the charges. They advance three theories: That he was driving rapidly, his car struck the hole in the road, was thrown to the right, and, the brakes being defective, he was not able to stop it before it passed over the embankment; the steering wheel was defective, became locked, and, as the brakes did not work, that caused the accident; he was so absorbed in his troubles that, without looking, he drove into the ditch where the old bridge had been.

[3-5] We do not state the evidence in detail. No one saw the deceased and no one knows his thoughts. Without motive one would hardly suspect intentional self-destruction. Automobile accidents are common; they are often the result of abstraction. Having motive, still no one can say whether the act was intentional or accidental. The presumptions of law arising from the fact of death are against self-destruction, for human experience shows that it is rare, even among the unhappy. Insurance Co. v. McConkey, 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308. It may be that the burden resting on one who seeks the cancellation of a contract is not increased by the legal presumption against the thing that is alleged as a ground for the relief. But certainly the law places upon him who relies upon self-destruction the burden of showing it by a preponderance of the evidence. This is not sustained by proof of motive, with circumstances probably indicating suicide if there is equal probability that the death was accidental. The proofs here leave the issue to inference, and, unless the more reasonable view is that the act was suicidal, the plaintiff must fail. Maccabees v. King (6 C. C. A.)

142 F. 678, was decided on its own facts, as were Insurance Co. v. Bradshaw (C. C. A.) 2 F.(2d) 457, and Davis v. Insurance Co. (C. C. A.) 12 F.(2d) 248, and the other cases cited by appellant. Many of them deal with death by shooting, a not unusual method of suicide, and one in which the actuating cause is not easily concealed, or so likely to be within the range of accident. The circumstances here are not inconsistent with either cause. The lower court found that it was not suicide. We cannot say it was.

Judgment affirmed.