R. T. Wright, Complainant, Appellant, *v.* The Bank of
Chattanooga, Defendant, Appellee.

(*Knoxville,* September Term, 1932.)

Opinion filed March 18, 1933.

CANTRELL, MEACHAM & MOON, for complainant, appellant.

J. L. FOUST, for defendant, appellee.

MR. JUSTICE COOK delivered the opinion of the Court.

The bill was filed to recover a deficiency judgment after foreclosure under a deed of trust given to secure a note. The facts stipulated in the trial court are:

April 8, 1925, the complainant Wright loaned R. A. McBrien and wife Annie McBrien $2500 for which they executed a negotiable note due two years after date, secured by deed of trust on land. May 9, 1928, Wright, at the instance of the McBriens, extended payment of the note to April 8, 1930. December 20, 1928, the McBriens conveyed the land to defendant Bank of Chattanooga and it assumed the mortgage debt. March 8, 1929, the bank conveyed the land to J. L. Jenkins, Trustee, and he assumed the mortgage debt. April 5, 1930, Wright, by a binding agreement with Jenkins, extended payment until April 5, 1932. That was done without the knowledge or approval of McBrien or the Bank of Chattanooga. May 16, 1930, a payment of $250 was made, reducing the obligation to $2250. Interest was paid to April 8, 1931. May 21, 1932, the property was sold under Wright's deed of trust for $956.30, $1443.70 less than the debt, and for that amount, with attorney's fees provided for on the face of the note, the complainant sued the bank. He insists that by assuming the McBrien debt as part consideration for

6

the purchase price, the bank became personally liable for the debt secured by the mortgage.

The chancellor said inasmuch as the names of the bank and Jenkins did not appear upon the note their obligation was not controlled by the negotiable instruments law, but by equitable principles relating to principal and surety. He held that Wright's extension of payment to Jenkins, under the circumstances, discharged the bank. In that conclusion we concur.

While the negotiable instruments law may rigidly fix rights and obligations, according to the tenor of the instrument and as between the holder and parties to the instrument, as held in *The Atlantic Life Insurance Co.* v. *Carter,* 165 Tenn. 628, the act does not protrude into the realm of equity jurisprudence and impair or destroy rights and equities arising from independent contract between the mortgagor, his grantees, and the mortgage creditor. By such contracts, parties whose names do not appear on the instrument representing the mortgage debt are often brought into circumstances which result as a legal consequence, independent of the instrument and uncontrolled by the negotiable instruments law, in establishing either a primary or a secondary liability for the debt. For instance, if the grantee of mortgaged premises assumes payment of the mortgage debt, he becomes the principal debtor and the grantor becomes surety for the debt. *Bank* v. *Walter,* 104 Tenn., 11; *Sully* v. *Childress,* 106 Tenn., 109; *Insley* v. *Webb,* 41 A. L. R., 274, Anno. 282; *Zastrow* v. *Knight,* 72 A. L. R., 374, Anno., 390. And when the mortgagor conveys to another who assumes the debt, who in turn conveys to another who also assumes the debt, the latter occupies the same position with reference to the debt. He becomes the principal debtor.

*Merrimon* v. *Parkey,* 136 Tenn., 659, 41 C. J., p. 737, sec. 739. By their undertakings, the successive grantees form a chain of liabilities for payment of the mortgage debt, the last grantee being the principal debtor and the others sureties. Notwithstanding the want of privity, held necessary in the English cases, all the grantees incur a personal liability to the mortgagee which may be enforced by him against the last assuming grantee as the principal debtor and against antecedent grantees as sureties for the debt. 41 C. J., p. 743, sec. 805, p. 748, sec. 814, p. 755, sec. 824. See also *Leiberman* v. *Bowden,* 121 Tenn., 496; *Title Company* v. *Bushnell,* 143 Tenn. 681.

The rule imposing this personal liability upon grantees who assumed the mortgage debt, and handing it over to the mortgagee with right to enforce it, rests upon the idea that the creditor is entitled to the benefit of the securities which his debtor has obtained to assure payment of the principal obligation and may enforce it under equitable principle of subrogation. Equity does not stop at the creditor, the right extends also to debtors who occupy the law-created status of sureties and assures to them the right of paying the debt at maturity with the right of consequent subrogation.

It is to be reasonably inferred from the record that Wright had notice of the transfer from McBriens and was charged with the duty to treat the law-created sureties, other than the maker of the note, as sureties and do nothing to impair their rights. 41 C. J., p. 734, sec. 785.

It is the generally accepted rule that a purchaser having assumed payment of an existing mortgage and falling within the class of mere sureties for the debt is released by a valid extension of time granted by the mortgage creditor to the principal debtor. The rule springs

from the doctrine of subrogation which gives to the surety the right to pay the debt when due and then assert all the rights of the creditor of selling the mortgaged property and of resorting to the principal debtor for the deficiency.

The complainant Wright granted to Jenkins, for a valid consideration, an extension for two years from the date of maturity, and by that act is estopped from holding the bank which occupied the status of surety liable for the debt. The defendant's suretyship does not fall within the category of a maker, or an accommodation maker, who, under the negotiable instruments law, are only dischargeable in the manner prescribed by the act, as held in *Graham* v. *Shephard,* 136 Tenn., 418; *Bank* v. *Magelson,* 48 A. L. R., 710; *Peter* v. *Fenzer,* 65 A. L, R., Anno., 1425; *Bank* v. *Elliott,* 81 A. L. R., 1005, and our recent case of *Insurance Co.* v. *Carter.*

The rights of the parties are grounded upon a contract other than a negotiable instrument and governed by principles of equity aside from the negotiable instruments law. The complainant recognized the status created by the deeds of conveyance when he dealt with Jenkins as the principal debtor and extended payment two years beyond maturity of the debt. In doing so he deprived the defendant of the right to pay the debt at maturity and proceed against both the land and Jenkins, which then might have avoided the deficiency which occurred two years or more later. The complainant's right was personal against the grantees (21 A. L. R., 440) and, by his act of extending the payment of the debt, he is estopped from asserting that personal right, because the defendant, not a party to the note, and only secondarily liable for the debt, was discharged by the unauthorized

extension to the principal debtor, for reasons stated in *Apperson* v. *Cross,* 5 Heisk., 482; *Bank* v. *Walter,* 104 Tenn., 11; *Insley* v. *Webb,* 41 A. L. R., Anno., 282: *Zastrow* v. *Knight,* 72 A. L. R., 379, Anno., 389, and *Union Stove & Machine Works* v. *Caswell,* 16 L. R. A., 85.

Affirmed.