In the Matter of **QUINCO CORPORA-TION, Bankrupt.**

**Maurice W. QUINN and Chattanooga Venetian Blind Co., Inc., Appellants,**

v.

**G. Royal NEESE, Trustee in Bankruptcy, Appellee.**

No. 17553.

United States Court of Appeals
Sixth Circuit.

Feb. 21, 1968.

Richard P. Jahn, Chattanooga, Tenn., for appellants; Tanner & Jahn, Chattanooga, Tenn., on brief.

Will Allen Wilkerson, Chattanooga, Tenn., for appellee.

---

Before PHILLIPS, EDWARDS and COMBS, Circuit Judges.

PHILLIPS, Circuit Judge.

This bankruptcy case arises out of one transaction which resulted in three separate debts. The seller was Maurice Quinn, trustee,[1] and the buyers were C. D. Groner, an individual, and Quinco Inc., of which Groner was the sole stockholder.

(1) Quinn, trustee, sold Groner, individually, certain real estate, payment for which was secured by a deed of trust on the real estate.

(2) Quinn, trustee, sold certain personal property to Quinco Inc., which was the principal debtor on the note for $55,000. Payment of this $55,000 note was guaranteed personally by Groner and secured by the same deed of trust that secured payment of the other indebtedness on the real property.

(3) Quinn, trustee, sold certain other personal property to Quinco Inc. for $4,910. Quinco was the principal debtor of this note. Groner guaranteed payment on this note personally, but this note was not secured by the deed of trust on the real property.

Quinco operated for a few years and made certain payments on the notes, but on April 21, 1965, this corporation filed a voluntary petition in bankruptcy. Quinco subsequently was adjudicated bankrupt.

Thereafter, Groner, acting through an intermediary, bought all the personal property of Quinco from the trustee in bankruptcy. No question is raised as to the propriety of this purchase.

Before the proceedings in bankruptcy were closed, Groner sold to representatives of Chattanooga Venetian Blind Co. both the personal property which he had acquired from Quinco's trustee in bankruptcy and the real property which he had bought from Quinn, trustee. When Chattanooga Venetian Blind Co.'s representative acquired the personal property from Groner, cash was paid for the personal property; the Venetian Blind Co. paid $10,000 and assumed the unpaid balance on the mortgage on the real property. When Groner sold the property to the Venetian Blind Co., he assigned the Venetian Blind Co. his "claim against Quinco Corporation and G. Royal Neese, trustee in bankruptcy, arising out of my payment to Maurice W. Quinn, trustee, of the balance owed on two notes [on which Groner was guarantor] * * *." This assignment is dated May 21, 1965. The notes were paid in full by Chattanooga Venetian Blind Co., Inc., on June 17, 1965. Also on June 17, 1965, Quinn, trustee, released the deed of trust and entered the release of public record in the office of the county register.

After having paid the full balance of the three notes to Quinn, trustee, and relying upon the acquisition of Groner's rights against Quinco and the trustee, Chattanooga Venetian Blind then attempted to prove in bankruptcy Groner's claim of $39,168 as guarantor of the bankrupt's notes for the personal property. The claim was resisted by the trustee and was not allowed by the referee. The District Judge, the late Leslie R. Darr, affirmed the referee, holding that "neither in equity nor in law, is there any merit in this claim against the bankrupt estate."

The theory of the trustee in bankruptcy and the referee in not allowing Chattanooga Venetian Blind's claim is that whereas Groner prior to selling his mortgaged real estate to Chattanooga was merely surety on the bankrupt's obligation, when the real estate which secured Groner's secondary obligation was sold to the Venetian Blind Company, the purchaser by assuming the indebtedness became primarily liable for Quinco's obligation; and further that by operation of law Quinco's status became that of surety. It is uncontroverted that while a surety on a debt is entitled to recover

---

1. To avoid confusion, it should be emphasized that Quinn was not a trustee in bankruptcy and his designation as trustee has no relationship to the bankruptcy proceeding.

from the principal, no law permits a principal to recover from a surety.

■ Tennessee courts have held repeatedly that when a purchaser of real estate assumes an indebtedness secured by a deed of trust or mortgage on real estate or other lien thereon, the purchaser becomes primarily liable for the obligations secured by the mortgage or deed of trust. The rule was well stated by the Supreme Court of Tennessee in Wright v. Bank of Chattanooga, 166 Tenn. 4, 166 Tenn. 4, 6, 57 S.W.2d 800, speaking through Mr. Justice Cook:

> "For instance, if the grantee of mortgaged premises assumes payment of the mortgage debt, he becomes the principal debtor and the grantor becomes surety for the debt. Bank v. Walter, 104 Tenn. 11, 55 S.W. 301; Sully v. Childress, 106 Tenn. 109, 60 S.W. 499, 82 Am.St.Rep. 875; Insley v. Webb, 122 Wash. 98, 209 P. 1093, 41 A.L.R. 274, annotation 282; Zastrow v. Knight, 56 S.D. 554, 229 N.W. 925, 72 A.L.R. 379, annotation 390. And when the mortgagor conveys to another who assumes the debt, who in turn conveys to another who also assumes the debt, the latter occupies the same position with reference to the debt. He becomes the principal debtor. Merrimon v. Parkey, 136 Tenn. [645], 659, 191 S.W. 327, 41 C.J. p. 737, § 739. By their undertakings, the successive grantees form a chain of liabilities for payment of the mortgage debt, the last grantee being the principal debtor and the others sureties. Notwithstanding the want of privity, held necessary in the English cases, all the grantees incur a personal liability to the mortgagee which may be enforced by him against the last assuming grantee as the principal debtor and against antecedent grantees as sureties for the debt. 41 C.J. p. 743, § 805, p. 748, § 814, p. 755, § 824. See

also Leiberman v. Bowden, 121 Tenn. 496, 119 S.W. 64; Title [Guaranty & Trust] Company v. Bushnell, 143 Tenn. 681, 228 S.W. 699, 12 A.L.R. 1512."

There are numerous other Tennessee decisions to the same effect, and we are cited to no case to the contrary.

■ The same rule applies to chattel mortgages. In Kincaid v. Alderson, 209 Tenn. 597, 603, 354 S.W.2d 775, 778 (which is one of the cases relied upon by appellant), the Supreme Court of Tennessee, speaking through its present Chief Justice, said:

> "When the Kincaids assumed the mortgage indebtedness of the Aldersons on this mobile home they, that is the Kincaids, became primarily liable to the mortgagee, owner of the debt, and the Aldersons then occupied the legal status of a surety. Fulmer v. Goldfarb, 171 Tenn. 218, 101 S.W.2d 1108; Title Guaranty & Trust Co. v. Bushnell, 143 Tenn. 681, 228 S.W. 699, 12 A.L.R. 1512; Merrimon v. Parkey, 136 Tenn. 645, 191 S.W. 327, and many others. This proposition is annotated in 21 A.L.R. 439, wherein it is shown that most of the jurisdictions in the United States, including Tennessee, have adopted this proposition. In other words the Kincaids now become personally liable for the debt."

■ Under these authorities we agree with the District Judge and referee in bankruptcy that when Chattanooga Venetian Blind Company acquired the realty and personal property in question, and assumed the indebtedness thereon,[2] it became the principal debtor and the previous guarantors became sureties. As principal debtor the Venetian Blind Company has no right to assert this claim in bankruptcy.

Appellants rely upon Kincaid v. Alderson, 209 Tenn. 597, 354 S.W.2d 775; Dixon v. Morgan, 154 Tenn. 389, 285 S.

**2.** Although the note for $4910 for personal property was not secured by the deed of trust on the real property, Chattanooga Venetian Blind Company paid cash for this and other personal property at the time of acquisition, assuming the unpaid balance on the mortgage on the real property.

W. 558; Harrison v. Harrison, 149 Tenn. 601, 259 S.W. 906, 32 A.L.R. 563; Amos v. Central Coal Co., 38 Tenn.App. 626, 277 S.W.2d 457; and Davis v. Arnett, 27 Tenn.App. 1, 177 S.W.2d 29. These cases apply principles of equity and subrogation which we find not to be controlling under the facts of the present case.

Affirmed.