D. C. MOORE, Jr., Adm'r *v.* Larry HANSEN, et ux

5-5393                                    465 S. W. 2d 684

Opinion delivered April 5, 1971
[Rehearing denied May 10, 1971.]

*Douglas Bradley,* for appellant.

*W. B. Howard & Jack Segars,* for appellees.

Conley Byrd, Justice. Cleta Moore, wife of D. C. Moore, deceased, and appellee Betty Hansen, wife of appellee Larry Hansen, jointly purchased some beauty shop

equipment for the purpose of operating a beauty shop. D. C. Moore arranged for a loan for the two wives at the Citizens Bank of Jonesboro. Larry Hansen and D. C. Moore signed the note as accommodation makers for their wives. D. C. Moore requested a credit life insurance policy in the amount of the indebtedness. The premium therefor was included in the note on which the wives were primarily liable. After two installments were made, D. C. Moore was killed in an auto collision. After some litigation, the credit life insurance company paid the bank the policy amount, which after payment of counsel fees left a balance due on the note of $359.49. Cleta Moore paid this amount to the bank, received the note and assigned it to appellant. Appellant brought this action against Larry Hansen and Betty Hansen to recover one half of the balance due on the note before the insurance proceeds were applied. The trial court, upon stipulated facts, denied appellant any right of subrogation to the $5,132.48 paid by the insurance proceeds but did award him a judgment for one half of the $359.49 paid by Mrs. Cleta Moore. The latter portion of the judgment has been satisfied.

For reversal appellant contends that D. C. Moore was an accommodation maker and that appellant as Moore's administrator is entitled to recover from the Hansens one half of the proceeds of the credit life insurance policy that were paid on the debt. A further contention is that he is entitled to recover under Ark. Stat. Ann. § 66-3204(2) (Repl. 1966). We find both contentions without merit.

Appellant cannot recover as an accommodation maker unless he is subrogated to the rights of the creditor. The cases dealing with the issue make a distinction where the credit life insurance premiums are paid by the decedent and where the premiums are paid by another. See *Miller* v. *Potter*, 210 N. C. 268, 186 S. E. 350 (1936) and *Hatley* v. *Johnson*, 265 N. C. 73, 143 S. E. 2d 260 (1965). We think the distinction is valid. Neither appellant nor his decedent has paid anything and before he can become subrogated to the rights of the bank as a

creditor he must have paid the debt, *Haley* v. *Brewer,* 220 Ark. 637, 249 S. W. 2d 128 (1952). It was stipulated that "D. C. Moore, Sr. and Larry Hansen were accommodation endorsers on the said note, receiving no direct benefits therefrom."

When it is considered that the credit life insurance policy here involved stood only as additional security for the loan, it becomes even more logical and practical that appellant should not be subrogated to the rights of the creditor—*i. e.,* the debt in effect was paid by security that the principal obligors had already paid for.

It is true that Ark. Stat. Ann. § 66-3204(2) permits a recovery by a decedent's estate of proceeds of life insurance paid to an unauthorized party in violation of Ark. Stat. Ann. § 66-3204. Here, however, there was no violation of the statute which provides:

"(1) Any individual of competent legal capacity may procure or effect an insurance contract upon his own life or body for the benefit of any person. But no person shall procure or cause to be procured any insurance contract upon the life or body of another individual unless the benefits under such contract are payable to the individual insured or his personal representatives, or to a person having, at the time when such contract was made, an insurable interest in the individual insured.

\* \* \*

"(3) 'Insurable interest' with reference to personal insurance includes only interests as follows: . . .

"(b) In the case of other persons, a lawful and substantial economic interest in having the life, health, or bodily safety of the individual insured continue, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the individual insured."

Obviously the bank as creditor had an insurable interest. Furthermore the decedent himself asked for the insurance.

Appellees contend that the appeal should be dismissed because appellant accepted the benefits of the judgment entered. We disagree but because of the holding above the issue becomes moot.

Affirmed.

HARRIS, C. J. and FOGLEMAN, J., dissent.

JOHN A. FOGLEMAN, Justice, dissenting. I cannot agree with the majority that the decision of this case hinges upon the question of the identity of the payor of premiums for the credit life insurance on D. C. Moore's life. Certainly the Citizens Bank of Jonesboro had an insurable interest in the life of Mr. Moore since he was a surety of the principal obligors and in the event of their default he would have been liable, but this is not to say that, since the bank had an insurable interest, the principal obligors also had an insurable interest. If the principals on the note, Mrs. D. C. Moore and Mrs. Larry Hansen, had taken out the insurance on Mr. Moore's life it would have been void because it would have been considered a wager-contract. *McRae* v. *Warmack*, 98 Ark. 52, 135 S. W. 807, 33 L. R. A. (n.s.) 949;[1] *Langford* v. *National Life & Accident Insurance Company*, 116 Ark. 527, 173 S. W. 414, 17A Ann. Cas. 1081; *United Assurance Association* v. *Frederick*, 130 Ark. 12, 195 S. W. 691. It is true that a person has an insurable interest in his own life and can insure his life and assign the proceeds to one not having an insurable interest *where there is no prior agreement* between the insured and the beneficiary that the beneficiary will pay the premiums. *Langford* v. *National Life & Accident Insurance Company*, supra; *United Assurance Association* v. *Frederick*, supra. In the present case there was

---

[1] The case of *National Life & Acc. Ins. Co.* v. *Davis*, 179 Ark. 621, 17 S. W. 2d 312, held that an uncle does have an insurable interest in the life of a nephew overruling *McRae* v. *Warmack*, supra, to that effect, but not otherwise.

a prior agreement that the principals, Mrs. Moore and Mrs. Hansen, would pay the premium since it was included in the note they signed at the bank.

Of course, Larry Hansen's liability for payments was as surety and co-obligor with Moore. He never paid a cent on the debt or the premiums, yet he is unjustly enriched. If the credit life insurance on D. C. Moore insured the *debt* to the bank, subrogation would appear to be questionable, but Ark. Stat. Ann. § 66-3804 (1) (Repl. 1966) states:

> "Credit life insurance" means insurance on the life of a debtor pursuant to or in connection with a specific loan or other credit transaction.

While there are no Arkansas cases involving credit life insurance on a surety's life there is a Georgia case in point, *Betts v. Brown,* 219 Ga. 782, 136 S. E. 2d 365 (1965). The Georgia statute defined credit life insurance in the identical language used in the Arkansas statute. Ga. 1, 1960, pp. 289, 743; Code Ann. § 56-3302 (1). The decision held that this provision makes it clear that it is the life of the debtor, not the debt itself, which is insured. The *Betts* case held that the comakers of a note to the bank held the position of principal and surety, and when the credit life insurance proceeds from the death of the surety paid the debt the widow of the surety was subrogated to the rights of the bank. In the case of *Kincaid v. Alderson,* 209 Tenn. 597, 354 S. W. 2d 775 (Tenn. 1962), the court found a relationship of surety and principal between an original mortgagor and an assuming mortgagor. The mortgaged property was a mobile home, and the note was for five years. The mortgage included premiums for a life insurance policy on the original mortgagor's life, and the policy was issued to the mortgagee. After the mortgage was assumed the original mortgagor died, and the insurance company paid the balance due. In discussing subrogation of the rights to the surety the decision stated:

> When thus a surety by his death through a valid life insurance policy on his life has discharged

the obligation, this does not discharge the obligation of the Kincaids who are primarily liable. It would be exactly the same situation as if a surety on an obligation for any reason decided to pay off the obligation. This would not release the principal debtor from his obligation, but it would then be transferred to the surety who had discharged the obligation to release himself as surety. Thus by the death of Alderson and his life insurance paying this debt it would merely transfer the debt of the principal obligator to the surety rather than to the creditor. When the debt is thus paid the surety subrogated to the rights of the creditor.

Also in the case relied upon by the majority, *Hatley* v. *Johnson*, 265 N. C. 73, 143 S. E. 2d 260 (1965), it refers to both of the above cases of *Kincaid* and *Betts* with apparent approval and allowed the wife of a surety to recover when the credit life insurance proceeds were used to pay a mortgagee after the surety died. The decision also pointed out that in 1953 the statute G. S. § 58-195.2 was enacted which states:

Credit life insurance is declared to be insurance upon the life of a debtor who may be indebted to any person, firm, or corporation extending credit to said debtor.

The decision also pointed out that *Miller* v. *Potter*, 210 N. C. 268, 186 S. E. 350 (1936), decided by a divided court, denied subrogation to a surety because the mortgagee purchased the insurance on the life of the original mortgagor for the debt. Since the passing of the statute cited above it would appear that it is no longer possible in North Carolina to insure the debt. The effect of the decision is that if such payment were allowed to cancel the primary debtor's obligation, then he would in effect be made a beneficiary although he has no insurable interest in the life of the insured.

The majority decision has made Mrs. Larry Hansen and Larry Hansen beneficiaries under the policy, because the premium was added to the principal debt, al-

though she had no insurable interest, and since this is a case of first impression in Arkansas I cannot help but feel that we have disregarded the statute defining "Credit life insurance" as well as the guiding decisions of our sister states that are directly in point. Nothing in this record indicates anything other than Moore's requirement that the principal debtors protect his estate from liability as an accommodation endorser. Nothing indicates that he made, or intended to make, either Mrs. Hansen or her husband a beneficiary of the policy. Only the bank and his estate were beneficiaries, as was clearly indicated in the policy. His estate was secondary beneficiary because the bank could never have retained the excess of any proceeds of insurance over the debt to it.

I do not understand how it could possibly be said that the principal debtor has any economic interest in the continued life of an accommodation endorser. A co-surety, such as Hansen, could not have an insurable interest in excess of the amount he could require his co-surety to contribute if they were called upon to pay the debt. Appellant did not seek to recover this one-half from Hansen.

I would reverse the decree.

I am authorized to state that Mr. Chief Justice Harris joins in this opinion.