INTERNATIONAL HARVESTER CREDIT CORPORATION *v.* Bobby D. HURST

CA 79-190                                      594 S.W. 2d 582

Court of Appeals of Arkansas
Opinion delivered February 13, 1980
Released for publication March 5, 1980

*Owens, McHaney & Calhoun,* for appellant.

*J. Marvin Holman,* for appellee.

JAMES H. PILKINTON, Judge. This is an appeal from an order of the circuit court denying a motion of International Harvester Credit Corporation for judgment notwithstanding the verdict of the jury; and in ordering a new trial.

This is not a typical appeal from an order granting a new trial. Both appellant and appellee agree that the verdict of the jury cannot stand. The issue on this appeal is whether the court properly ordered a new trial, instead of granting appellant's motion for judgment notwithstanding the verdict.

The entire case turns upon the interpretation of a group credit life insurance policy involved.

On October 10, 1973, West-Ark Equipment Co., Inc. (West-Ark), an independent dealer in Russellville, Arkansas, sold to Albert Yerton a TD-8 International Dozer. Of the $16,000 purchase price, $3,500 was paid down and the balance of $12,500 was financed under an installment contract. That contract was assigned for value to International Harvester Credit Corporation (IHCC).

At that time IHCC had a program in effect under which it purchased credit life insurance coverage for customers who financed this type of equipment. The coverage was purchased under a group policy from Association Life Insurance Company, Milwaukee, Wisconsin (ALIC). IHCC paid the entire premium for the coverage and was the sole beneficiary. Maximum coverage was $25,000 or the amount required to pay off the contract, whichever was less, in this case the latter.

The policy of insurance provided that only one debtor per contract could be insured, the "Eligible Debtor". In the event more than one person was a debtor, the policy specifically provided that the Eligible Debtor was the debtor who was "primarily responsible" for the indebtedness.

On July 12, 1974, Albert Yerton transferred his equity in the dozer to appellee Bobby D. Hurst. Under the Transfer of Equity document by which Hurst acquired Yerton's equity,

Hurst was primarily responsible for payment of the balance of the contract and Yerton was a guarantor. Also under that document, the benefits of all insurance were transferred to Hurst.

After the transfer transaction on July 12, 1974, Hurst made only three payments, all late and the last one covering the October payment being made January 16, 1975. In an effort to collect the past-due installments, IHCC wrote to the guarantor Mr. Yerton in February, 1975. Hurst and IHCC then learned that Mr. Yerton had died on January 15, 1975.

Mr. Hurst then claimed that the credit life insurance should pay off the contract, entitling him to ownership of the dozer. IHCC took the position that Hurst as primary obligor was the only insured debtor and, since he was still alive, was obligated for payment of the indebtedness. When Hurst refused to pay, IHCC and West-Ark, the selling dealer, repossessed the dozer in April, 1975. It was subsequently sold to West-Ark, after notice and demand to Hurst, for $9,500. At the time of trial, four years later, West-Ark had been unable to sell the dozer. Testimony as to the value of the dozer was from $9,000 to in excess of $14,500.

Hurst filed suit in April, 1978, against ALIC for $10,-086.65, the debt at the time of the death of Albert Yerton, and for conversion against West-Ark and IHCC for $4,413.35, the difference between the debt and the alleged 1975 value of the dozer of $14,500.00.

At the conclusion of plaintiff's case, a directed verdict motion by ALIC was granted. At the conclusion of all the evidence, a directed verdict motion by West-Ark was granted. The jury was instructed that it would return a verdict against IHCC if IHCC was entitled to recover the insurance proceeds upon the death of Albert Yerton, if IHCC knew or should have known that the proceeds were so payable, and if with that knowledge IHCC wrongfully repossessed the dozer from Mr. Hurst. If recovery for Mr. Hurst was found, the jury was instructed that the measure of damage was the fair market value of the dozer at the time of repossession.

The jury returned a 9-3 verdict for plaintiff and fixed his

damage at "return all payments only." Upon inquiry by the Court, this was amended to include "all payments made by Mr. Hurst before and after transfer of equity."

A motion for judgment notwithstanding the verdict by IHCC was denied, but the Court did order a new trial since the verdict was not in accordance with the instructions. IHCC has appealed from the order overruling its motions and granting the new trial, and plaintiff Hurst has cross-appealed from the granting of the motions for directed verdict of ALIC and West-Ark.

The entire case turns upon the interpretation of the group credit life insurance policy involved here. Unless the proceeds were payable upon the death of Albert Yerton, there was no submissible case against any of the defendants. In this respect this case is quite similar to *John Deere Co. v. Atkinson,* 252 Ark. 1074, 482 S.W.2d 115 (1972). In that case, as here, there were two debtors on a note, and one of them died. The Court held that the deceased debtor was not the insured debtor under that policy language and reversed a jury verdict. Here, too, if the deceased debtor was not the insured debtor, there was no jury case and International Harvester Credit Corporation was entitled to the grant of its motion for directed verdict or its motion for judgment notwithstanding the verdict. Since the decision turns on that issue, the points on appeal are considered together.

Albert Yerton purchased the subject dozer from West-Ark Equipment Co., Inc. (West-Ark) on October 10, 1973. The installment contract was assigned for value to International Harvester Credit Corporation (IHCC). As part of a program in effect at that time, the life of Yerton became insured under an IHCC policy of group credit life insurance at the time IHCC acquired the paper.

The credit life coverage was acquired by IHCC, was paid for by IHCC, and IHCC was the beneficiary. No portion of the premium was paid by Yerton, included in the contract, or included in the price of the equipment. It was acquired from funds of IHCC as additional collateral for the debt.

The master policy was issued to IHCC by defendant Association Life Insurance Company of Milwaukee, Wisconsin, and is in evidence. It insures the life of a debtor to IHCC by the following specific language:

"Eligible Debtor means that Debtor determined in accordance with the following rules: (1) *only one Debtor may be insured hereunder with respect to any one indebtedness;* (2) if there is but one Signer, that person is the Eligible Debtor; (3) *if there are two or more Signers, that Debtor primarily responsible for the indebtedness shall be the Eligible Debtor* unless more than one Debtor is primarily responsible in which event the first named Debtor shall be the Eligible Debtor. In no event, however, shall a Debtor become an Eligible Debtor, prior to the Effective Date of this Policy." (Emph. sup.)

On July 12, 1974, plaintiff Bobby D. Hurst acquired the equity in the dozer from Yerton and assumed the indebtedness. This was effected by use of the Transfer of Equity document introduced as Exhibit No. 2 By Stipulation. In that document the original purchaser (Yerton) "hereby consents to the substitution of the Transferee (Hurst) as the insured under any insurance presently in force covering all interests in the property under the aforesaid contract." If for no other reason, this provision caused substitution of Hurst for Yerton as the debtor whose life was insured under the credit life program.

There is, however, an even more basic reason why the life of Albert Yerton was no longer insured under the policy, and that is the plain language of the policy itself. By virtue of this Transfer of Equity, Bobby Hurst became the party primarily responsible for the indebtedness, and Albert Yerton became the guarantor. The trial court so instructed the jury in Instruction No. 8, and Hurst even admitted that in his testimony.

The policy of insurance clearly states that "only one Debtor may be insured hereunder with respect to any one indebtedness." Specifically addressing itself to the situation at bar, the policy goes on to say:

"(3) if there are two or more Signers, that Debtor responsible for the indebtedness shall be the Eligible Debtor. . ."

Here Bobby Hurst was primarily responsible for payment of the debt. Only he *could* have been insured under the policy IHCC purchased and paid for. There was debate at trial as to whether a certificate of insurance was provided to him or whether one was required, but that is all irrelevant. The insurance company agreed to pay the debt if, *and only if,* the party primarily responsible for payment died. That did not happen and that decides this case.

At trial the Court granted a directed verdict in favor of the insurer, ALIC. That decision was plainly correct since Hurst had no insurable interest in the life of Albert Yerton and had no standing to sue ALIC. *Betts* v. *Brown,* 219 Ga. 782, 136 S.E. 365 (1964); *Hatley* v. *Johnston,* 265 N.C. 73, 143 S.E. 2d 260 (1965); *Kincaid* v. *Alderson,* 209 Tenn. 597, 354 S.W. 2d 775 (1962); Ark. Stat. Ann. § 66-3204 (Repl. 1966). West-Ark also was correctly granted a directed verdict since it converted nothing and ended up losing money.

As to IHCC, the trial court submitted the case apparently on the theory that the jury could find that IHCC was entitled to the proceeds of the insurance and was not entitled to repossess the dozer from Hurst. There was no evidence to support such a theory. First of all, as stated, there is no basis under the insurance policy for concluding that Albert Yerton's life remained insured after Bobby Hurst became primarily responsible for payment of the debt.

Secondly, it must be remembered that Hurst paid nothing for credit life insurance and refused to pay the debt for which he assumed responsibility. Under no set of circumstances could he fail to honor that obligation, refuse to pay the debt, and yet still be entitled to retain the dozer. For him to be entitled to any claim for conversion, he must have paid for the dozer and be entitled to its possession.

Credit life insurance only insures the life (and liability) of the insured, particularly where no premium is paid by the

one whose life is insured. *Moore, Adm'r* v. *Hansen,* 250 Ark. 367, 465 S.W. 2d 684 (1971). Upon the death of Albert Yerton, therefore, even if he were the insured, all that would happen is that his estate could not be pursued for the debt. IHCC could not have enforced the guaranty, but Hurst as primarily obligated for payment of the debt could not escape that liability for payment. Having failed to pay, he is entitled to nothing.

As stated earlier, all agree that the verdict rendered cannot stand. The jury was told to award the fair market value of the dozer if they found for the plaintiff. Instead, the jurors obviously compromised to reach their 9-3 verdict by directing that Hurst recover only the payments he made. That verdict was a separate ground for the IHCC motion for judgment notwithstanding the verdict. The jury plainly refused to find for plaintiff upon the only basis permitted by the trial court and, instead, attempted to do equity and return the status quo ante. Plaintiff not being entitled to such equitable relief and the jury declining to return a verdict for anything else, therefore IHCC was entitled to judgment.

The order of the trial court denying the motion of International Harvester Credit Corporation for judgment notwithstanding the verdict, and instead directing a new trial as to IHCC, is reversed and the cause dismissed as to International.

The directed verdicts in favor of Association Life Insurance Company and West-Ark Equipment Company, previously entered by the trial court and questioned by the cross-appeal, are affirmed.

Reversed and dismissed on direct appeal. Affirmed on cross-appeal.