Catherine MADERIOS

v.

Joseph D. SAVINO.

No. 78–332–Appeal.

Supreme Court of Rhode Island.

Aug. 6, 1980.

**840**

Robinson & Mascia, Shayle Robinson, Providence, for plaintiff.

Murphy & Mullen (James J. Mullen, appearing), Providence, for defendant.

## OPINION

BEVILACQUA, Chief Justice.

This is an appeal from a decision of a justice of the Superior Court, sitting without a jury, in which he held the defendant liable to the plaintiff as payee on a promissory note.

The facts are not in substantial dispute. Prior to the date of the transaction in issue, plaintiff and William T. Beaupre, who is now deceased, were joint owners of a savings account at Industrial National Bank. Although Beaupre had provided all of the funds for the account from the sale of a restaurant, plaintiff held the passbook to the account in her possession.

Desiring to obtain $10,000 for business purposes, defendant Savino sought advice from Beaupre on the best way to proceed. Beaupre agreed to help. On February 25, 1974, Beaupre borrowed $10,000 from Industrial National Bank. He pledged as collateral the savings account with Industrial National Bank that he and plaintiff held jointly. That account did not contain sufficient funds to cover the loan; however, defendant deposited $190 into the account to increase the balance to an amount that would cover the amount of the loan. Beaupre executed a promissory note (here-

inafter the first note) to the bank evidencing the agreement and reciting the collateral received. The defendant signed that note as guarantor. The plaintiff signed a pledge agreement pledging as collateral for the first note the savings account that she and Beaupre owned. Together with Beaupre, plaintiff also signed in blank a withdrawal slip for the savings account, which slip the bank retained. Additionally, the bank required that a credit life insurance policy naming Beaupre as the insured and the bank as beneficiary be obtained.

On the same day, February 25, 1975, defendant executed a promissory note (hereinafter the second note) paralleling many of the terms of the first note and naming Industrial National Bank, William T. Beaupre, or plaintiff, alternatively, as payees. The first and second note included the identical total of payments, amount financed, finance charge, annual percentage rate, monthly installment term, and late charge. The plaintiff thereupon maintained the second note in her possession.

Thereafter, using the payment book that the bank provided with the first note, defendant Savino paid eighteen monthly payments to the bank in the amount required under the terms of the first and second notes. Included in this amount were premium payments on the credit life insurance policy on Beaupre's life. On September 1, 1975, Beaupre died. The proceeds of the credit life insurance were applied to the outstanding balance on the first note. The bank returned to plaintiff the first note, the pledge agreement, and the withdrawal slip. The defendant discontinued the installment payments.

The plaintiff instituted this action to recover sums allegedly still due and payable to her as alternative payee on the second note. After trial the trial justice found that Beaupre never intended to make a gift to defendant. Furthermore, the trial justice ruled that on the evidence presented he could find no intention or agreement on the

part of the parties that payment of the first note by life insurance proceeds upon the death of Beaupre should discharge defendant Savino's obligation on the second note. He concluded, therefore, that the second note remained a valid obligation of defendant and entered judgment accordingly for plaintiff in the sum of $8,925 plus interest and costs, the amount outstanding on the second note.

In this appeal, defendant principally contends that the trial justice erred in considering the first and second note as separate obligations, the latter surviving the extinguishment of the former. He argues that the writings and parol evidence introduced at trial evince one loan transaction. That obligation, he contends, was extinguished for the benefit of all parties when the proceeds of the life insurance policy on Beaupre's life satisfied the balance owed to Industrial National Bank on the first note.

■ Whenever parties have submitted their cause to a trial justice sitting without a jury, we abide by the oft-stated rule that the findings of fact of the trial justice will be accorded great weight and will not be disturbed on appeal unless it appears that his findings were clearly wrong or that the trial justice misconceived or overlooked material evidence. *J. Koury Steel Erectors, Inc. of Massachusetts v. San-Vel Concrete Corp.*, R.I., 387 A.2d 694, 696 (1978). For the reasons that follow, we cannot agree with the trial court's conclusion that the parties did not intend that the second note would be satisfied upon satisfaction of the first note.

We note initially that the instruments in issue are governed by Article 3 of the Uniform Commercial Code, G.L. 1956 (1969 Reenactment) chapter 3 of title 6A. Although the second note, upon which plaintiff has sued, is not a negotiable instrument,[1] § 6A–3–805 provides that the code applies to such instruments. *See* Comment to § 6A–3–805. Particularly pertinent to defendant's argument that the notes at issue here evidence

---

1. The second note is not payable "to the order of" or "to the bearer" and therefore does not meet the requirement of negotiability found in G.L. 1956 (1969 Reenactment) § 6A–3–104(1)(d).

one transaction is § 6A–3–119(1), which states:

"Other writings affecting instrument.— (1) As between the obligor and his immediate obligee or any transferee the terms of an instrument may be modified or affected by any other written agreement executed as a part of the same transaction * * *."

With the guidance of § 6A–3–119(1), our reading of the record leads us to conclude, contrary to the implicit findings below, that the first and second notes, executed by Beaupre and defendant respectively, evidence one transaction. A comparison of the terms of the first and second notes indicates strongly that they were intended to compose a sole transaction. The second note contains a number in the upper left-hand corner which, except for several digits missing because of a punched hole, is the same number as appears on the first note to the bank. Also, the financing terms of both notes in both form and amount are the same; both notes call for sixty monthly payments of $212.50 commencing on the same date and payable on the same day of each succeeding month. Moreover, plaintiff herself testified that defendant had paid the installments on the first note directly to the bank and that these payments had satisfied defendant's obligation on the second note.

Convinced, as we are, that the two notes were executed as part of one transaction to evidence the final and complete expression of the agreement of the parties, *Fram Corp. v. Davis*, R.I., 401 A.2d 1269, 1272 (1979), and that they should be construed together "to understand the mutual rights and obligations of the parties," *Dockery v. Greenfield*, 86 R.I. 464, 467, 136 A.2d 682, 685 (1957) (oral agreement and written memorandum construed together), we must next determine what effect the execution of the second note was intended to have upon the terms of the first. In viewing the terms of the two notes together, it is clear to us that

Beaupre drafted the second note containing terms similar to the first in an attempt to establish an arrangement whereby defendant Savino would assume the obligations that Beaupre, as maker of the first note, owed to the bank, namely, the payment of monthly installments in satisfaction of the principal and interest on the loan, as well as the premiums on the life insurance policy. The subsequent actions of the parties bear out this intention. The defendant was given the payment book that the bank provided Beaupre as a method of accounting for each monthly installment. Thereafter defendant paid each monthly installment directly to the bank, and the bank noted the payments as made against the outstanding balance of the loan. We believe that the trial justice either overlooked or misconceived material evidence—the identical terms in the two notes and the subsequent action of the parties—or was otherwise clearly wrong in reaching his conclusion that the record was devoid of any intention that the obligations of the first note should be tied up with the duties under the second note.

■ We have recognized that a debtor may arrange to satisfy his obligation to a creditor by securing from another a promise to pay the creditor the amount of the obligation. *Kehoe v. Patton*, 23 R.I. 360, 50 A. 655 (1901); *Wood v. Moriarty*, 15 R.I. 518, 9 A. 427 (1887); *Urquhart v. Brayton*, 12 R.I. 169 (1878). Consistently with the evidence adduced at trial we find that the parties intended the second note to establish this arrangement. The effect of this single transaction, therefore, was to place upon defendant the principal liability to repay the bank loan that Beaupre obtained.[2] Accordingly, at least as far as defendant and Beaupre are concerned, by operation of law, defendant, as promisor to pay the debt owed to the bank by Beaupre, and Beaupre, as the promisee/debtor in the transaction, created a suretyship relationship, with defendant principally liable for the debt and

2. Although defendant signed the first note as guarantor, he nevertheless became principally liable for payment of that note, at least insofar as Beaupre was concerned, when he signed the second note.

Beaupre a surety for payment of the debt. Simpson, *Handbook of the Law of Contracts*, 258 (2d ed. 1965); *see, e. g., In re Roth*, 272 F. 516 (N.D.Ohio 1920); *Fanning v. Murphy*, 126 Wis. 538, 105 N.W. 1056 (1906).

Having determined the intent of the parties as evidenced in their agreement and thereby having established their relationship and obligations to one another, we now come to the ultimate issue in this case— whether payment of a debt with the proceeds of credit life insurance on the life of a surety to an obligation discharges the principal obligor on the debt. This is a question of first impression before this court.

The decision of the Supreme Court of Arkansas in *Moore v. Hansen*, 250 Ark. 367, 465 S.W.2d 684 (1971), though based on facts not entirely analogous to those of the instant case, still provides us with some guidance. In *Moore* the estate of one of two accommodation makers on a promissory note sought reimbursement from a principal maker for one half the balance of a debt which had been paid by the proceeds of credit life insurance on the deceased accommodation maker's life. The court opined that since the principal obligors on the note had paid the insurance premiums of the credit life insurance policy on the deceased, it was neither logical nor practical to allow the estate of the deceased to be subrogated to the rights of the creditor bank and recover the amount paid from the defendant principal obligor. *Id.* at 369, 465 S.W.2d at 685–86.

Here, it is undisputed that defendant paid the premiums for the credit life insurance on Beaupre's life which was issued in conjunction with the execution of the first note. As we have already discussed above, defendant became, as a matter of law, the principal obligor on that note, and Beaupre became a surety. We believe, as did the court in *Moore*, that defendant had an insurable interest in the

life of his surety[3] and therefore should have the benefit of the insurance he paid for thus completely discharging him on the bank note. Also, since the evidence indicates that both notes represent one transaction, plaintiff has no recourse as an alternate payee on the second note because the bank, as another payee, has been paid in full. The defendant's obligation has therefore been satisfied. *See* G.L. 1956 (1969 Reenactment) § 6A–3–601(1)(b); § 6A–3–603.

The defendant also argues that he is not liable to the plaintiff on the second note because she furnished no consideration for his promise to pay. In view of our decision above respecting the effect of the credit life insurance payment on the outstanding debt, this issue stands moot.

The defendant's appeal is sustained, the judgment of the Superior Court is reversed, and the cause is remanded to the Superior Court with direction to enter a final judgment on behalf of the defendant.

---

**3.** We have determined that defendant and Beaupre created a suretyship relationship and, therefore, were jointly and severally bound on the obligation to the bank. Accordingly, they had "an insurable interest in the lives of each other, at least, 'to the extent of the suretyship' or debt." 3 Couch on Insurance 2d § 24:157 at 272. (Anderson ed. 1960).