[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] DECISION
Following an order by this Court enjoining an impending foreclosure sale, Plaintiffs seek a determination of this Court as to the amount due under the defaulted loan. Plaintiffs and Defendant have filed supporting memoranda in connection therewith.
 Facts and Travel
Plaintiff Cullen, Inc. ("Cullen") is incorporated in the State of Rhode Island Cullen owns the property central to this dispute, known as 707 George Washington Highway (the "Property"). Cullen's principals, Plaintiffs John and Barbara Cullen ("Cullen's principals"), are residents of Lincoln, Rhode Island.
On July 7, 1987, Cullen, a Rhode Island corporation maintaining its principal place of business in Lincoln, Rhode Island, executed and delivered a $365,000.00 Promissory Note (the "Note") secured by a Mortgage Deed (the "Mortgage") to Pawtucket Institution for Savings. The Note contains the following provisions:
 Failure to pay any installment when due, or alienation of the whole or part of the premises mortgaged as security for this note, shall cause the whole amount of said principal sum unpaid to become due and payable forthwith at the option of the holder of this note.
 If there shall be a default on this note and this note shall be placed in the hands of an attorney for collection, the undersigned promises to pay to the holder hereof all reasonable expenses, including without limitation attorneys' and counsel fees incurred by the holder for the purpose of collecting any monies which may be due under this note whether or not the suit is instituted.
The Mortgage was properly recorded in the Lincoln Land Evidence Records. The Mortgage expressly incorporated a document entitled "MORTGAGOR'S COVENANTS, CONDITIONS AND AGREEMENTS" (the "Mortgage Rider") by reference thereto. This Mortgage Rider was executed and recorded with the mortgage and contains the following provision:
 That the mortgagee may pay all taxes, assessments, water rates or insurance premiums on the mortgaged premises not paid by the mortgagor when due, and said mortgagee shall be immediately reimbursed by said mortgagor unless otherwise provided and until so reimbursed any such sums shall be secured by this mortgagee and shall until paid bear interest at the same rate as the mortgage indebtedness.
Cullen's principals also executed and delivered personal guaranties ("Guaranties") as further security for the Note. Defendant Capital Crossing Preferred Corporation ("Defendant") now holds the Note, Mortgage, and Guaranties.
In May of 1995, Plaintiffs petitioned the Providence Superior Court for relief of the 1994 tax assessment on the Property ("1995 Petition"). While this Petition was pending Plaintiffs failed to remit taxes owing for the years 1994 and 1995, in violation of G.L. 1956 (1996 Reenactment) § 44-5-28. In accordance with § 44-9-1 et seq., the Lincoln Tax Collector commenced a sale of the Property for non-payment of past-due tax. Phoenix Jewel LLC purchased the property at this sale. However, Plaintiffs timely exercised their statutory right of redemption.
Again in 1996, Cullen failed to pay local property taxes and the Property was to be sold to satisfy the back taxes. However, Cullen convinced the Lincoln Tax Collector to remove the Property from the tax sale list and await the decision regarding the 1995 Petition, which then was still pending. The property taxes for 1996 remained unpaid.
Cullen continued in this pattern, failing to pay the 1997 and 1998 property taxes. Pursuant to § 44-9-1 et seq., the Lincoln Tax Collector again scheduled the sale of the Property, this time with respect to the non-payment of taxes for the years 1996, 1997, 1998. John and Barbara Cullen attempted to no avail to convince the Tax Collector to remove the Property from the sale list. Consequently, the Property was sold by the collector to Harold R. Smith d/b/a Westcott Development ("Westcott"). A deed granting tax title to Westcott was properly recorded in the Lincoln Land Evidence Records. Cullen made no attempt to redeem the Property from Westcott.
On November 1, 2000, a Justice of this Court entered a Stipulation conditionally settling Cullen's dispute with the Town of Lincoln regarding the assessed value of the Property in the 1995 Petition. However, approval of the Lincoln Town Council was necessary to effectuate the Stipulation.
On December 1, 2000, Westcott petitioned the Court to foreclose rights of redemption with respect to the Property. Defendant received proper notice thereof. In addition, on April 24, 2001, Defendant was given notice of a sale of the Property based on Cullen's failure to pay fire district taxes for the years 1999 and before. Accordingly, Defendant demanded that Cullen attempt to redeem the Property and pay the fire district taxes; Plaintiffs did neither.
On May 2, 2001, Defendant redeemed the Property from Westcott and paid the overdue fire district taxes to the Limerock Fire District Tax Collector. Two days later, Defendant demanded that Plaintiffs reimburse it for the above-mentioned expenditures; again, Plaintiffs refused. Thereafter, Defendant accelerated the loan and commenced foreclosure proceedings pursuant to the power of sale contained in its mortgage documents; whereupon this action was filed by Plaintiffs to restrain the sale. Defendant counterclaimed, seeking all sums due under the loan. This Court issued a Preliminary Injunction, restraining the sale until a hearing on the merits could be scheduled.
All parties submitted legal memoranda with supporting documentation; and testimony was taken in connection therewith. On February 26, 2003, the Court entered its decision and made the following findings:
 The rider contained language, inter alia, by which the mortgagor agreed that it would pay the taxes. The language is . . . in the ordinary form, and it authorized the bank to make payment . . . of the taxes in the event they were not paid by the mortgagor; a rather standard, boilerplate, vanilla-type provision.
 Whether or not that tax sale was done in a manner consistent with our statutes is not significant . . . to the result in this case. Our Supreme Court has interpreted the provisions that permit a city or a town to sell property for taxes in a very strict manner. And, there here is an allegation, and for the purposes of this decision the Court might take it as a given, that there was a failure of appropriate notice to all of those parties who otherwise would be entitled to notice of a proposed tax sale. That, of course, did not preclude someone from saying that a tax sale had occurred. It did not preclude a purchaser from purchasing and, with the passage of time, from seeking, again pursuant to our statutes, to foreclose the so-called equity of redemption.
This Court, finding that the mortgage and mortgage rider controlled, ruled in favor of the bank and lifted the preliminary injunction. It noted that Plaintiffs had ample opportunity to take "legal steps as might have been necessary so as to put the bank in a position where it was not going to be jeopardized." Therefore, this Court indicated that the Bank acted in a reasonable manner to protect its security interest. As a result, this Court permitted Defendant to commence foreclosure 30 days thereafter; however, for the protection of Plaintiffs, this Court prohibited any advertising of the foreclosure sale for 20 days.
After the 30-day period expired, Defendant commenced foreclosure for the second time, scheduling the sale for June 4, 2003. However, on June 2, 2003, Plaintiffs again approached this Court requesting a stay of the foreclosure proceedings, offering to pay undisputed amounts aggregating, $133,938.81 directly to Defendant and an additional $78,752.40, the amount in dispute, to the Court Registry. As a result, this Court enjoined the foreclosure proceedings and these payments were remitted by Plaintiffs.
Accordingly, the only issue before this Court is the determination of the amount due under the loan.
 Analysis
Plaintiffs argue that they are responsible for "the principal amount due on the loan, plus interest on that amount (at the Note rate) through December 19, 2001, the date that Cullen offered to pay it in full." Plaintiffs agree that they are required to reimburse Defendant for "actual taxes and statutory interest (real estate and fire district) paid by Capital Crossing to Westcott or to the Town of Lincoln on Cullen's behalf." Plaintiffs maintain two arguments. First, Plaintiffs argue that they cannot be held responsible for Defendant's decision to redeem Property sold improperly and in violation of the notice requirements associated therewith. In addition, given that Plaintiffs breached their obligations under the mortgage and not the note, they contend that they are not liable for costs incurred, a provision of the Note only.
Conversely, Defendant argues that Plaintiffs are responsible for all costs incurred in connection with the redemption of the Property and any and all interest and late fees in connection with the loan. Specifically, Defendant points to five categories of expenses owed by Cullen. Defendants seek Eighty Thousand, Nine Hundred Ninety-Six and 14/100 ($80,996.14) as of August 28, 2003, plus accrued interest, costs, and attorneys' fees under the loan which is the subject of this action. Defendants calculate this sum according to the Affidavit of Bradley Shron as follows:
 Principal Balance: $1,412.78 Interest: 9,253.78 Goldman Environmental: 2,000.00 Irving Schectman Auctioneer: 4,515.45 Legal Fees as of June 30, 2003: 54,454.50 Legal Disbursements: 9,359.63 _________ Total Due: $80,996.14
 Interest continues to accrue at the rate of $.20 per day.
Essentially, Defendant argues that it is entitled to the above-mentioned amount because as holder of the mortgage, such expenditures were necessary to safeguard its investment.
 Taxes Paid
Plaintiffs do not contest that they are bound to reimburse Defendant for taxes paid by Defendant to protect its collateral interest. On this issue, the Supreme Court has said:
 "[l]egal subrogation arises by operation of law when there is a debt or obligation owed by one person which another person, who is neither a volunteer nor an intermeddler, pays or discharges under such circumstances as in equity entitle him to reimbursement to prevent unjust enrichment. Whether one may be legally subrogated depends on whether he was a mere volunteer and, if not, whether he is on equitable principles entitled to subrogation as against other claimants. A mortgagee who has paid taxes to protect his interest in the property has been entitled to a lien on the premises under the doctrine of equitable subrogation."
 Rhode Island Hosp. Trust Nat'l Bank v. Feriole, 1980 R.I. Super. LEXIS 56, 5 (R.I. Super. 1980) (citations omitted) (emphasis added).
Accordingly, Defendant is entitled to recover the taxes paid to the Limerock Fire District and Westcott.
 Notice Requirements for Tax Sale
The General Assembly has enacted statutes which impose strict requirements to be followed in the event of a tax sale. G.L. 1956 § 44-9-1 et seq. Specifically, the law requires notice of a tax sale to be given to the taxpayer, the mortgagee, and other interested parties. G.L. §§ 44-9-10, 44-9-11. Plaintiffs contend that the tax collector did not abide by all of these requirements, and therefore, Defendant did not act reasonably by redeeming the property when it knew or should have known of these defects.[1] However, this Court has previously decided that compliance with the notice requirements is "not significant" to the issue before this Court. To reiterate, this Court stated:
 "That, of course, did not preclude someone from saying that a tax sale had occurred. It did not preclude a purchaser from purchasing and, with the passage of time, from seeking, again pursuant to our statutes, to foreclose the socalled equity of redemption."
Furthermore, this Court found that Defendant's position was "jeopardized" by Plaintiffs' actions, or rather inactions.[2] This inaction on the part of the mortgagor was the cause of the redemption and subsequent foreclosure; Defendant "was [not] to be called on or put in a position where it had to make a legal determination as to whether or not the tax sale by the Town in the first instance had properly been conducted." This whole issue could have been obviated by appropriate action by the taxpayer plaintiff.
Plaintiffs argue that the notice problems narrow the issue before this Court. Citing Allen and Reed v. Investments, Inc.,57 R.I. 457, 190 A. 447 (R.I. 1937), Plaintiffs claim that equity requires that a mortgagor reimburse a purchaser only for the actual taxes and interest expended on property purchased in an invalid tax sale. Defendants assert that this Court should abide by the maxim: "he who seeks equity must do equity." Id.
However, Plaintiffs have taken the above-mentioned quote completely out of context. The complainant in Allen and Reed
sought to set aside the tax deed without reimbursing the purchaser for the amounts expended in payment of the back taxes.Id. The court responded by stating the following:
 "The rule, which appears to us to be applicable to the facts in the instant case, seems to be stated correctly in Black on Tax Titles, (2d. ed.), § 442, as follows: `The maxim, he that seeks equity must do equity, requires that a party seeking to have a tax deed set aside as a cloud upon his title to real estate must offer to repay to the purchaser the amount of all taxes and costs, paid by him, which were a just and legal charge upon the land, with interest; and it is error to set aside a tax sale for mere irregularities, not affecting the substantial justice of the tax, without requiring such payment.'" Id. at 461, 449.
Accordingly, the court found that the complainant was liable to the purchaser for the actual taxes and interest expended for the purchase of the tax deed. Clearly, Allen and Reed stands for the proposition that a property owner may not reap a reward for failing to pay his taxes. This maxim indicates that at the very minimum, the property owner is responsible for reimbursing the purchaser for funds expended which released the property from a tax lien, to do otherwise would be utterly inequitable. This case does not propose that equity limits the property owner's liability to actual taxes and statutory interest, as Plaintiffs suggest.
Equity is defined as "[t]he body of principles constituting what is fair and right" or "[t]he recourse to principles of justice to correct or supplement the law as applied to particular circumstances." Black's Law Dictionary 560 (7th ed. 1999). The facts presented in this case evince a persistent pattern in which Plaintiffs fail to pay taxes, sit on their rights of redemption, and after Defendant expends an enormous amount of resources, protect their property interest only at the last possible moment. It is this Court's opinion that to deny Defendant all of the reasonable costs associated with its redemption of the property, regardless of notice problems, would be a flagrant violation of the principles of equity.
Accordingly, this Court finds that Plaintiffs' defense of notice problems under the facts of the case at bar is without merit. Defendant may rightfully recover the costs actually incurred by it as a result of the redemption of the Property from Westcott and as to the Fire District taxes regardless of the propriety of the tax sale in the first instance.
 Contractual Obligations under the Note: Costs and Fees
Plaintiffs argue that they are not under any contractual obligation to reimburse Defendant for any amounts paid to Westcott, because they did not default under the note and the mortgage does not provide for the repayment of costs. Plaintiffs acknowledge that the Note contains the following contractual language: "if there shall be default in this note . . . allreasonable expenses, including without limitation attorneys'and counsel fees, incurred . . . for the purpose of collecting any monies which may be due under this note." Plaintiffs claim that the monies paid to Westcott do not fall within this language and they are only obligated to reimburse Defendant for actual taxes and statutory interest pursuant to the following terms: "all taxes . . . on the mortgaged premises not paid by the mortgagor when due."
Defendant's argument is without merit. It is well settled that where documents are executed together as part of a single transaction they will be construed together. Rhode IslandDepositors Economic Protection Corp. v. Coffey and MartinelliLtd., et al., 821 A.2d 222 (R.I. 2003). Specifically, the court stated:
 "We have held in Rotelli, 686 A.2d at 94, that separate documents executed as a part of the same loan transaction should be construed together. We further enunciated the following general principles:
 "It has long been a general rule in this jurisdiction that instruments executed at the same time, for the same purpose and in the course of the same transaction . . . are to be considered as one instrument and are to be read and construed together.' Old Kentucky Distributing Corp v. Morin, 50 R.I. 163, 165, 146 A. 403, 404 (1929); see also Maderios v. Savino, 418 A.2d 839, 842 (R.I. 1980) (promissory notes executed as part of single transaction construed together to determine the mutual rights and obligations of the parties). Moreover, instruments referred to in a written contract may be regarded as incorporated by reference and thus may be considered in the construction of the contract." Rotelli, 686 A.2d at 94.
Accordingly, the Note and the Mortgage shall be read together and the breach of one will invoke the terms of the other. The Note specifically provides:
 "If there shall be a default on this note and this note shall be placed in the hands of an attorney for collection, the undersigned promises to pay to the holder hereof all reasonable expenses, including without limitation attorneys' and counsel fees incurred by the holder for the purpose of collecting any monies which may be due under this note whether or not the suit is instituted."
Therefore, the terms of the Note impose liability on Plaintiffs for expenses incurred in connection with the redemption of the property.
In addition, Courts have discretion to award attorneys fees when the award is based on either the contractual language or statutory mandate. Women's Dev. Corp. v. City of Cent. Falls,764 A.2d 151, 162 (R.I. 2001). Clearly the documents as read together permit the recovery of attorneys' fees, and this Court will exercise its discretion to award them.
This Court further finds that the expenses, namely the costs of services provided by Goldman Environmental and Irving Schectman, are reasonable. These services were used, as the terms of the Note require, to collect monies due under the note, that is to say in connection with the contemplated foreclosure sale. Additionally, this Court finds the affidavit and accounting are sufficient to evince the enormous amount of time expended by the attorneys involved in this litigation and otherwise. The attorneys' fees are reasonable in this case. Accordingly, this Court awards Defendant the costs and attorneys' fees as requested.
 Interest and Late Fees on Principal under the Note
Plaintiffs assert that they are not responsible for interest and late fees which accrued during the pendency of this litigation. Again, Plaintiffs rely on an equity argument, insisting that they agreed to pay the principal due under the Note with the stipulation that the payment not be allocated to the amounts in dispute, but only to the principal and interest thereon.
Again, this Court remains unconvinced. Plaintiffs essentially assumed the risk of increased costs when they failed to pay both the property and fire district taxes in the first instance. Their refusal to reimburse Defendant for costs incurred to protect Defendant's collateral interest, which was placed in jeopardy by Plaintiffs neglect, is indicative of the theme that Plaintiffs use every conceivable technique to refuse or postpone payment.
Once more, Plaintiffs are bound by the terms of the Agreements. The contractual language clearly provides that Plaintiffs are obligated (1) to pay interest on the indebtedness and on taxes paid by the mortagee; and (2) to pay any late fees incurred as a result of a failure to remit payment. Accordingly, Plaintiffs are liable for the interest and late fees as requested.
 Conclusion
Regardless of alleged notice problems of the tax sale, this Court finds Plaintiffs are bound to reimburse Defendant monies paid directly to Westcott Development to redeem the property sold at tax sale and interest thereon, including actual taxes paid and interest accrued. Plaintiffs are bound by the terms of the Note to pay the principal, interest thereon, reasonable costs, and attorneys' fees. Finally, Plaintiffs are bound to pay interest due and late fees for failure to remit payment during the pendency of this litigation. Accordingly, this Court awards Defendant damages, costs, and fees as requested.
Order to enter.
[1] Plaintiffs contend that the tax sale was void ab initio because appropriate notice was not given to all those parties entitled thereto. Specifically Capital Crossing did not receive notice of the sale. Capital Crossings became aware of the tax sale only after it received notice of the Petition to foreclose rights of redemption.
[2] Defendant acted reasonably by redeeming the property because it may have been barred from challenging the propriety of the tax sale or otherwise, if it failed to timely object to the petition to foreclose the right of redemption. United LendingCorp. v. City of Providence, 827 A.2d 626, 635 (R.I. 2003).
In Karayiannis v. Ibobokiwe, 2003 R.I. LEXIS 171 (R.I. 2003), the Rhode Island Supreme Court noted: "a party seeking to contest the validity of a tax sale pursuant to § 44-9-31 must file on or before the return day `specifications setting forth the matters upon which he or she relies to defeat the title' and, if the claimant fails to file such specifications `all questions of the validity or invalidity of the title . . . shall be deemed to have been waived.' We refused to construe this mandatory language to allow a party `to file specifications at any time.' We held it was the Legislature's intention in enacting § 44-9-31 to stabilize tax titles, and any construction of the statute to permit an eleventh-hour challenge to the validity of the tax title would frustrate this salutary purpose. (citations omitted). Here as well, this Court finds that Plaintiffs' eleventhhour challenge would frustrate the purpose of permitting a mortgagee to redeem property in which it maintains a collateral interest by prohibiting that mortgagee recovery of costs incurred as a result of that redemption.