IN THE COURT OF APPEALS OF TENNESSEE

AT KNOXVILLE

FILED

May 19, 1999

Cecil Crowson, Jr.
Appellate Court
Clerk

| | |
|---|---|
| STATE OF TENNESSEE, ex rel., CAMPBELL COUNTY, TENNESSEE, et al. | ) C/A NO. 03A01-9808-CV-00247 ) |
| Plaintiffs/Counter-Defendants-Appellees, | ) ) ) |
| v. | ) ) ) |
| ELK VIEW LAND AND GRAVEL, INC., et al., | ) ) ) |
| Defendants/Counter-Plaintiffs/Third-Party Plaintiffs-Appellants, and | ) ) ) APPEAL AS OF RIGHT FROM THE ) CAMPBELL COUNTY CIRCUIT COURT ) |
| BARBARA LAY, | ) ) ) |
| Intervening Counter-Plaintiff and Third-Party Plaintiff-Appellant, | ) ) ) |
| v. | ) ) ) |
| JOE KIDD, et ux., | ) ) |
| Third-Party Defendants-Appellees. | ) HONORABLE CONRAD E. TROUTMAN, JR. ) JUDGE |

For Appellants

DAVID A. STUART
Stuart & Van Riper
Clinton, Tennessee

For Appellee State of Tennessee

JOHN KNOX WALKUP
Attorney General and Reporter

CYNTHIA L. PADUCH
Senior Counsel

For Appellee Campbell County,
Tennessee

PETER D. VAN DE VATE
Knoxville, Tennessee

For Appellees Joe Kidd
and wife, Beulah Kidd

DAVID E. RODGERS
Kramer, Rayson, Leake,
  Rodgers & Morgan
Oak Ridge, Tennessee

1

# O P I N I O N

REVERSED AND REMANDED                                    Susano, J.

This appeal requires us to determine whether the lower court erred when it conducted a bench trial on the merits of the parties' respective claims and thereafter issued a permanent injunction, all in the face of a written demand for a jury trial.

` Appellant Elk View Land and Gravel, Inc.[1] ("Elk View") is engaged in mining operations on one side of State Highway 297 in Campbell County. Appellee State of Tennessee ("State")[2], initiated this action by filing a complaint against Elk View and others for right of entry and for a permanent injunction to abate a nuisance in Campbell County. The State alleged that Elk View had obstructed a culvert under State Highway 297, thereby causing a hazardous condition on the road and thereby also causing flooding on the property of Joe Kidd and his wife, Beulah Kidd. The trial court issued the requested permanent injunction. Elk View appeals, raising issues that present the following questions for our review:

> 1. Did the trial court err in refusing to afford the appellants a jury trial?
>
> 2. Did the trial court err in conducting the proceedings in this cause as a final trial on the merits and in issuing a permanent injunction, rather than conducting the proceedings as a hearing on the State's request for a temporary injunction and other interlocutory matters?
>
> 3. Did the trial court err in dismissing the appellants' counterclaims?
>
> 4. Did the trial court err in dismissing appellants' third-party claims?

---

[1]We refer to Elk View as the representative appellant. The appellants are Elk View Land and Gravel, Inc.; Elk View Land and Gravel, Inc. d/b/a First Sand and Gravel Company; George Spalding, Individually and d/b/a First Sand and Gravel Company; Stanley Lay, Individually and d/b/a First Sand and Gravel Company; and, apparently, Barbara Lay.

[2]Appellees Joe Kidd, his wife, Beulah Kidd, and Campbell County adopted, by reference, the brief of the State of Tennessee pursuant to the provisions of Rule 27(j), T.R.A.P.

We reverse the judgment of the trial court and remand for a jury trial on the issues made by the pleadings.

On January 3, 1997, the State filed a complaint for right of entry and for a permanent injunction to abate a nuisance in Campbell County. The complaint sought to have the condition allegedly caused by Elk View's act of "placing a berm or dam at the outlet end of a cross drain under State Route 297 declared a public nuisance." It likewise sought "to permanently enjoin [Elk View] from interfering with the natural drainage of water under or around State Route 297." In conjunction with the filing of the State's complaint, the State obtained, *ex parte,* a restraining order pursuant to Rule 65.03, Tenn.R.Civ.P., directing Elk View to remove the berm or dam that it had placed on the property at the outlet end of the cross drain under State Route 297. The State further requested that a hearing be held on February 3, 1997, regarding its request for an injunction "enjoining [Elk View] from interfering with the natural drainage of water or, in the alternative, mandatorily enjoining Defendants from continuing to obstruct the natural drainage of water, and/or ordering an immediate right of entry in order to abate the nuisance on behalf of the State." Although a hearing was scheduled as requested, the parties agreed to continue the hearing and re-schedule it at a mutually-agreeable time. On March 12, 1997, an agreed order was entered dissolving the restraining order.[3]

---

[3]Elk View filed a third-party complaint on March 10, 1997, seeking inverse condemnation. On the same day, Barbara Lay, wife of the defendant-appellant Stanley Lay, requested permission to intervene in the subject matter because of her ownership interest in the property that is the subject of this action. Her petition was granted. We assume, but do not know for sure, that Attorney David A. Stuart, who represents Mr. Lay on this appeal, also represents his wife before this court.

4

The parties agreed to a June 20, 1997, hearing.  That hearing was conducted over three non-consecutive days.  On July 24, 1997, the trial court issued the following memorandum opinion:

In this cause the State of Tennessee has filed a petition seeking to abate a nuisance it alleges has been created by the Defendants placing a dam at the outlet end of a cross drain under State Route #297 in Campbell County.  The Defendants have filed a denial and a cross [sic] action alleging an inverse condemnation and also filed an intervening complaint and/or a third party complaint against Joe Kidd, et ux wherein it is alleged that Mr. Kidd is responsible to a degree for the flooding problem.

This case was heard in length over three days and many exhibits filed therein along with the testimony from numerous witness [sic].

The culvert in question in this case has been in place for over fifty years under a County Road and later a State road when the same was taken over by the State Highway department.

The Defendant, Elk View Land and Gravel, Incorporated, has a mining operation underway on the North side of State Highway 297 and Joe Kidd, et ux own the land on the south side of #297 highway on the inlet side of the culvert in question.  On the outlet side of the tile, Elk View has placed a spoil berm along the side of the highway and also placed spoil in front of the culvert and installed an additional culvert about 32 inches higher and in the berm to control the flow of the water.

It is the holding of the Court that the actions of the Elk View Land and Gravel, Inc., have created a nuisance in the area both to Mr. Kidd and to the general public.  The proof clearly shows that numerous wrecks have occurred when vehicles come upon the flooded was [sic] on the roadway.  The defendants have clearly diverted the natural flow of the water as the same has been for many years.  The court feels that this has been done to keep the water out of their mining operation despite approved plan[s] for mining the area which show the water was to

5

> be channeled to a settlement pond area and
> then into a stream.
>
> The Court holds that the Petitioner is
> entitled to the relief sought against the
> defendant, Elk View Land and Gravel, Inc.
> The court further feels that the defendants
> claim for inverse condemnation is without merit
> and that the defendants third party claim against
> Joe Kidd is also without merit.  The court
> finds that the sale [sic] cause of the problem
> in this matter is the placing of the berm
> around the outlet end of the pipe and damming
> of the water.

An order and injunction was entered on August 7, 1997.  It incorporates the court's memorandum opinion of July 24, 1997.[4]

Elk View's first two issues challenge the right of the trial court to conduct a hearing on the merits in the face of Elk View's demand for a jury trial.  It argues that it participated in the hearing below, justifiably believing that the trial court was addressing only the State's request for a temporary injunction and its own request for a temporary injunction,[5] and not the merits of the other issues raised by the pleadings.  It further asserts that the confusion over the purpose of the hearing can be traced to the restraining order of January 3, 1997, obtained *ex parte*, which did not comply with the requirements of Rule 65.03(5), Tenn.R.Civ.P., in that the restraining order did not state that it would expire at the end of a period "not to exceed fifteen days." *Id*.  On March 12, 1997, the trial court entered an agreed order that the

---

[4]As Elk View notes in its brief, a discrepancy exists between the trial court's memorandum opinion dated July 24, 1997, and its memorandum opinion dated March 26, 1998, the latter opinion being filed in response to Elk View's motion for new trial.  The court's memorandum opinion dated March 26, 1998, indicates that "[a]ll issues were covered in this hearing except the inverse condemnation hearing," thus contradicting its earlier opinion dated July 24, 1997, in which the court stated that the "claim for inverse condemnation is without merit."  Both opinions relate to the same three-day hearing.

[5]Elk View had filed a motion for a temporary injunction regarding the drainage problem, in which motion it argued that clearing out the culvert under the Kidds' driveway would correct the flooding on the latter's property.

restraining order had expired at the end of the fifteen-day period. Elk View contends, therefore, that in light of its demand for a jury trial, the bench trial "insisted upon by the State was for the purpose of attempting to present sufficient evidence for the court to issue a *temporary* injunction" pursuant to Rule 65.04, Tenn.R.Civ.P. (Emphasis added).

Elk View argues on this appeal that it did not orally stipulate in open court that it waived its right to a jury trial, nor did it enter into a written stipulation evidencing its consent to a bench trial, the two methods of waiving a previously and properly demanded trial by jury that are contemplated by Rule 39.01(a), Tenn.R.Civ.P.

Although the State acknowledges that Elk View made a demand for a jury trial, it argues that Elk View waived its right to a jury trial "when [it] agreed to a hearing on the merits of the State's Injunction...and all pending Motions." In support of this argument, the State refers to the following discussion among counsel and the trial court in open court on June 20, 1997:

> MS. PADUCH: Can I ask a question here? If we are meeting on Thursday, what we are going to be discussing is the State's seeking to have the action of Elk View Land and Gravel declared a nuisance and to have that abated, and by doing that to get an injunction. All of these matters about water quality level really aren't going to be heard on the merits on Thursday. There is a motion to dismiss pending by the State as far as the inverse that doesn't have anything to do with this, and then there is a motion to dismiss pending --
>
> THE COURT: We will take up the motions first Thursday.
>
> MS. PADUCH: Right. But I don't think we are going to be getting into water quality levels

7

whatsoever on Thursday's hearing. That is what -- I just want to come prepared for what we are talking about Thursday. As I understand it, we are talking about the State's -- the State is the one that started all this trying to get an injunction.

THE COURT: We will take up the two motions first, then we will go into the hearing on the merits and resolve everything except the inverse condemnation matter.

MS. PADUCH: Are you saying, although I don't have a dog in this fight, but are you saying you are going to have a merits on the entire suit that has been brought, the third-party claim of --

THE COURT: Except the inverse condemnation.

MR. STUART: Well, the inverse condemnation and the third-party complaint for trespass against the Kidds. I would assume that would have to wait a further hearing, and what we would be doing Thursday would be our request for an injunction and the State's request for an injunction; is that right?

THE COURT: Is that what --

MS. PADUCH: Right. And the only other things pending are motions to dismiss.

MR. STUART: And the motions, yes.

THE COURT: Yes.

MS. PADUCH: Okay. That is what I was saying, I don't think Mr. Owens has anything to add to that if all we are doing is a motion to dismiss.

THE COURT: Well, that would be up to Mr. Rodgers whether he --

MS. PADUCH: You are right, it is, but I --

MR. RODGERS: Well, if we are excluding only the condemnation and dealing with everything else, then that includes whatever they claim we are dumping on them in the way of impure water going under the pipe, and so we are into water quality. If that is being excluded along with the inverse condemnation, then, no, I don't need him back. And I need the instruction of the Court as to how broad our hearing on Thursday is.

THE COURT: Is that what you are contending about the trespass?

8

MR. STUART:  Yes.  That goes to the merits of our suit for trespass.  And we are not going to be ready for a trial --

THE COURT:  Okay.

MR. STUART:  -- a full-blown trial on that issue Thursday.

THE COURT:  Okay.

MS. PADUCH:  That is what I was trying to raise.  I think we are just talking about the motions and the injunction that the State is trying to get.

THE COURT:  Okay.  I don't believe we would need him.

The State also relies on the following discussion from the hearing of June 26, 1997:

THE COURT:  I take it we are going to take up these motions first?  Let me see --

MS. PADUCH:  Your Honor, if we could, if we could deal with, actually, the injunction first, since all the parties that need to be here for the motions have to sit through all of this and --

THE COURT:  Okay. Let me see counsel just one second.  I couldn't hear you.

MS. PADUCH:  I am sorry.

THE COURT:  That air conditioning.

MS. PADUCH:  Everyone who has to be here for the injunction as far as the parties is going to have to be around for the motions, and there is going to be witnesses testifying that don't have anything to do with the motions, so if we could be heard on the injunction first.

THE COURT:  Do you want to just go ahead and hear the parties and then --

MS. PADUCH:  Yeah.

THE COURT:  -- hear the principals and --

MS. PADUCH:  And then take care of the motions after, maybe, hopefully get a ruling on the injunction --

9

THE COURT: Okay.

MS. PADUCH: -- and then deal with the motions, if necessary, at that point.

THE COURT: Okay. That is fine with me. Just, let's see, you are the moving party, you will go first and then --

The State argues that "no one disagreed as to the purpose of the hearing and the manner in which it would proceed," and that these discussions in court indicate that a jury trial was waived by all the parties pursuant to Rules 38.05 and 39.01, Tenn.R.Civ.P. In support of its waiver argument, the State cites the following four cases, in each of which the court found that a party's right to a jury trial had been waived: *Russell v. Hackett*, 190 Tenn. 381, 230 S.W.2d 191 (1950); *Leiberman v. Bowden*, 121 Tenn. 496, 119 S.W. 64 (1908); *Davis v. Ballard*, 946 S.W.2d 816 (Tenn.App. 1996); *Agricultural Insurance Company v. Holter*, 44 Tenn.App. 661, 318 S.W.2d 433 (1958).

Furthermore, the State denies the appellants' assertion that the June 20, 1997, hearing was for a "temporary injunction," arguing that it has never used the term "temporary injunction" in any of its court filings.

We address first the issues pertaining to the appellants' demand for a jury trial and the propriety of the trial court's action in conducting a bench trial on the merits.

Rule 38, Tenn.R.Civ.P., provides for a jury trial as of right:

Rule 38.02

10

Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed....

* * *

Rule 38.05

The failure of a party to make demand as required by this rule constitutes a waiver by the party of trial by jury. *A demand for trial by jury as herein provided may not be withdrawn without the consent of all parties as to whom issues have been joined.*

(Emphasis added). Rule 39.01, Tenn.R.Civ.P., also addresses trial by jury:

When trial by jury has been demanded as provided in Rule 38, the action shall be designated upon the docket as a jury action. *The trial of all issues so demanded shall be by jury, unless (a) the parties or their attorneys of record, by written stipulation filed with the court or by oral stipulation made in open court and entered in the record, consent to trial by the court sitting without a jury* or (b) the court upon motion or of its own initiative finds that a right of trial by jury of some or all of those issues does not exist under the Constitution or statutes of the state of Tennessee.

(Emphasis added).

In its brief, the State provides excerpts from the hearings on June 20 and 26, 1997, and argues that these excerpts indicate that Elk View stipulated in open court that it waived its right to a trial by jury. On the contrary, the transcript clearly indicates that Elk View notified the court that it could not be prepared for "a full-blown trial" by the time of the hearing scheduled for June 26, 1997, and that at no time did Elk View stipulate in court, or in writing, that the case was to be

heard by the court without a jury.  In addition, the transcript clearly indicates confusion regarding the breadth of the proceedings that were to occur following the hearing of June 20, 1997.  Furthermore, the cases cited by the State in support of its waiver argument are distinguishable from the facts before us in this case.  In *Davis* and *Russell*, the right to a trial by jury was waived by a party's failure to appear in court; and in *Agricultural Insurance Company*, the right to a jury trial was waived by the failure of a party to object in open court to a trial by the court without a jury.  In the case *sub judice*, Elk View did appear in court for the hearing, and as we have noted, did properly notify the court of its demand for a jury trial. Finally, in *Lieberman*, the Supreme Court found sufficient evidence in the record to support a determination that the right to a jury trial had been waived; we do not reach such a conclusion in the instant case.

In view of the substantial doubt in the record as to whether Elk View gave up its demanded trial by jury, we are unwilling to conclude that it gave up this important constitutionally-protected and statutorily-guaranteed right.  *See* Rule 38.01, Tenn.R.Civ.P.  We find that Elk View was justified in believing that the court's three-day hearing was, in fact, for the purpose of addressing preliminary matters and not for the purpose of adjudicating the substance of the parties' respective claims.

We conclude that Elk View did not waive its right to a trial by jury, and thus, the trial court erred in ruling on the merits of the case.  We reverse the judgment of the trial court

12

and remand for a jury trial on the issues made by the pleadings.[6] Costs of the appeal are assessed to the appellees.


_____
Charles D. Susano, Jr., J.


CONCUR:


_____
Houston M. Goddard, P.J.


  (Not Participating)  
Don T. McMurray, J.


_____

[6]The State does not contend in its brief that the issues made by the pleadings are outside the purview of those that are properly submitted, upon request, to a jury.